**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**WILSHIRE HOLDING CORPORATION, Respondent.**

No. 16678.

United States Court of Appeals
Ninth Circuit.

Dec. 8, 1960.

Rehearing Denied April 12, 1961.

See also 262 F.2d 51.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, David O. Walters, L. W. Post, Louise Foster, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Murray M. Chotiner, Beverly Hills, Cal., for respondent.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

In Wilshire Holding Corporation v. Commissioner, 9 Cir., 262 F.2d 51, we indicated that so-called rental payments (which in Oesterreich v. Commissioner, 9 Cir., 226 F.2d 798, and Commissioner of Internal Revenue v. Wilshire Holding Corp., 9 Cir., 244 F.2d 904, were determined to be installment payments on purchase) might be apportioned between principal and interest. The case was remanded for consideration of this point.

Back again before the Tax Court, the Commissioner ignored in his proposed computation of taxpayer's federal income

taxes for the years 1945 and 1946 at suit any allowance for interest.

Conversely, the taxpayer, with the opening we gave it, took the selling price as $75,000, being a fair cash value of the property in 1929. Then it set up an amortization on this basis which will result in a fantastic rate of interest in the latter years of the contract. The so-called rental payments total $697,380 over a period of 67 years and eight months.

We hold to our basic proposition heretofore suggested that there should be an apportionment of the payments between principal and interest. Of the justice of this we are sure. At the time the "lease" was entered into the highest legal rate at the situs—California—was 12 per cent per annum. Probably that rate was much higher than the normal going rate.

Had the Tax Court found a going rate, used it in an amortization, with each payment being applied first to interest, then to principal (the calculation is complicated, but it can be done, and a principal amount evolved), we would have been inclined to uphold it. We think the money which cannot be allowed as interest must be assigned to principal or the price.

However, the Commissioner gave the Tax Court no help. He still tried to disallow interest and proposed no interest rate whatsoever, our suggestion notwithstanding. In the conduct of a case, we think that the government must accept the consequences of what its attorneys do.

The allowance of Wilshire's rate of interest reaching in the 68th year about 800% per annum, though it has some logic, we would regard as out of order. When a court itself selects an interest rate for parties it ought to stay within legal rates. Perhaps United States v. National Wholesalers, 9 Cir., 236 F.2d 944, is authority, where we refused to approve an army officer's conduct contrary to public policy. Here we deal with legality and public policy, without the strong overtones of morality in National Wholesalers.

This time we shall say nothing about Mrs. Oesterreich's taxes.

There is no case here for depreciation because the "rental" converted by us into a "sale" was of Mrs. Oesterreich's vacant lots. But it is our underlying belief that if a taxpayer has his labels changed by the government he is entitled to the normal incident of the new label.

Reversed for proceedings consistent herewith, including the use of 12% per annum on unpaid balances as the rate of interest in the amortization table to be established.

On Petition for Rehearing

The petition for rehearing is denied. We have a belief that substantial justice will be done if our amended opinion of December 8, 1960, is followed.

While the cash value of the property was probably about $75,000 in 1929, certainly, with almost nothing down and about 68 years of payments, a sale on such contingencies would call for a much higher price tag than the normal market value, and so speculative a sale would not carry a cheap interest rate. A seller was bound to lose, having consented to subordination of a mortgage to be placed on the property by the "purchaser" of the property—if the market went down.

We regard the interest rate fixed here as having little precedent value, because we would assume the government hereafter will normally cooperate on fixing a reasonable interest rate, if it accepts the principle of allowing interest when it recasts. And, from what we have seen of this case, and we have seen a lot of it, we do not regard the rate as unfair, although normally it would not be our function to fix it.