**ESTATE of Walburga HEDRICK, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 20005.**

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1969.

---

Charles I. Rosin (argued), Los Angeles, Cal., for appellant.

Mitchell Rogovin, Chief Counsel, I.R.S., Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacs, Gilbert E. Andrews, Fred E. Youngman, Fred Becker, Harry Marselli, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS and JERTBERG, Circuit Judges, and CROCKER, District Judge.

CHAMBERS, Circuit Judge:

This tax case has its roots in a lease made by Walburga Oesterreich, later Walburga Hedrick, with Wilshire Amusement Corporation, predecessor of Wilshire Holding Corporation. The lease was for 68 years and dated September 11, 1929. At the end of the term, there was an option to acquire the property for a ten dollar payment.

A prerequisite for the reading of this opinion is a familiarity with the prior opinions on this same lease:

Commissioner v. Wilshire Holding Corp., 9 Cir., 244 F.2d 904;

Commissioner v. Wilshire Holding Corp., 9 Cir., 262 F.2d 51;

Commissioner v. Wilshire Holding Corp., 9 Cir., 288 F.2d 799;

Oesterreich v. Commissioner, 9 Cir., 226 F.2d 798.

Early we held that the commissioner could recast the transaction into a sale and later we held that an appropriate interest rate should be considered. On the third remand to the tax court, we ordered that Wilshire could compute the interest rate for a deduction at 12% per annum. Now the Hedrick estate petitions us for relief when it is charged in the tax court in its separate proceeding with receiving 12% interest, or thereabouts.[1]

1. Many years since 1945 are at issue here because the taxpayer has been signing waivers on the statute of limitations.

The taxpayer says collateral estoppel applies and it should be charged with no interest income because of our first Oesterreich decision, supra. We reject the contention.

The first Oesterreich case held that Walburga Oesterreich was entitled to treat the payments from Wilshire as long term capital gain; Wilshire was precluded from deducting its payments as rent. Subsequent decisions by this court followed the first Oesterreich case and recognized that payments under a rental agreement which had been recast by the commissioner into an agreement for sale could involve some deductible interest. Robinson v. Elliott, 9 Cir., 262 F.2d 383; Starr's Estate v. Commissioner, 9 Cir., 274 F.2d 294. Wilshire No. 2, 9 Cir., 262 F.2d 51, allowed interest to Wilshire. This changed the legal climate. At this stage, the estate of Mrs. Hedrick (formerly Mrs. Oesterreich) cannot rely on collateral estoppel to completely escape liability for interest payments received from Wilshire. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.[2]

Why did we use the 12% rate for Wilshire in Wilshire No. 3? Wilshire No. 2 suggested a division of the monthly rate between principal and interest. On remand, a former commissioner declined to submit any computation dividing the payments between principal and interest. Thus, on Wilshire No. 3 we held in effect, in view of the commissioner's failure to submit a division between principal and interest, that Wilshire as taxpayer should have for a deduction the favorable rate of 12% per annum, the highest lawful rate in California in 1929. We said that if a going rate had been found for 1929, we probably would have upheld it.

Here in Oesterreich (now Hedrick's estate) No. 2, we must admit that the points on which the executor chose to defend have substantial merit. And, they were not really covered or concluded in principle by any holding in the Wilshire cases. Thus, we feel we cannot fault the estate for not presenting evidence or computations at the second Oesterreich tax court trial on a division between principal and interest.

As to the Hedrick estate, we hold the division should assume a much higher value than $75,000, the top cash value at the time of the sale. People do not sell property at the same price on long contracts where, as here, there is little assurance of long term responsibility of the purchaser and of course the interest rate is usually higher than the legal rate (meaning the rate charged in absence of contract). The tax court may find something in the range of 7%[3] or 8% reasonable here.

The first Oesterreich and Wilshire holdings introduced or discovered new principles in tax law. Thus, the final sifting of the details was apt to be a little coarse.

Congress has taken ahold of the problem, confirming in principle our earlier Starr and Oesterreich and Wilshire Holding decisions. This it has done in passing Section 483, 26 U.S.C.,[4] effective after December 31, 1963. In the future, there should be no reason for inconsistent results.

We commend counsel for the government for trying to prevent the end result achieved here, and we should note that the excoriations (by counsel for petitioner) of the commissioner are hardly fair.

We think our holding is in line with a concession made here by the commissioner in a supplemental brief as follows:

"Of course, the Court may determine what is the proper rate for the

---

2. The discourse of the Tax Court on this issue adequately covers the subject and we agree. 23 TCM 1374, TC Memo. 1964–228.

3. We do note that the original lease provided for 7% on delinquencies, but that

should not be necessarily determinative on the 68 year term.

4. Sec. 224(d), PL 88–272, 78 Stat. 77.

'lease' independent of the Wilshire Litigation. Taxpayer was not a party to the proceeding in which the twelve per cent rate was set for Wilshire and, while the Commission is concerned that the revenue not be whipsawed by inconsistent determinations, there is, so far as we know, no principle of Law which would preclude the Court from determining the proper rate for this case. The Government would have to absorb the difference between the twelve per cent rate and any lower rate determined by the Court. * *"

On Oesterreich No. 3, which we hope will never be, there will be time to decide if the estate should be charged with 12% income because it refuses (if it does) to submit anything else.

The decision of the Tax Court is reversed for proceedings consistent with this opinion.