Estate of Walburga Hedrick, Deceased (a.k.a. Walburga Oesterreich), Ray Bert Hedrick, Executor v. Commissioner.
Estate of Hedrick v. Commissioner
Docket No. 1848-63.
United States Tax Court
T.C. Memo 1969-234; 1969 Tax Ct. Memo LEXIS 60; 28 T.C.M. (CCH) 1223; T.C.M. (RIA) 69234; November 4, 1969. Filed Charles I. Rosin, for the petitioner. Robert H. Feldman, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: This case is before the Court on remand from the United States Court of Appeals for the Ninth Circuit pursuant to judgment in lieu of mandate filed and entered January 6, 1969. The case was originally heard by this Court on March 19, 1964, and a decision was entered for respondent on December 15, 1964, in accordance with Memorandum Findings of *61 Fact and Opinion (T.C. Memo. 1964-228 filed August 27, 1964. On January 6, 1969, the Court of Appeals filed its Opinion, which affirmed in part and reversed for proceedings consistent with its opinion. The extensive history of this case and the related case of Wilshire Holding Corporation is contained in the following opinions: Oesterreich v. Commissioner, 226 F. 2d 798 (C.A. 9, 1955), reversing P-H Memo. T.C. 53,085 (1953). Commissioner v. Wilshire Holding Corp., 244 F. 2d 904 (C.A. 9, 1956), reversing P-H Memo. T.C. 53,085 (1953), certiorari denied 355 U.S. 815 (1967). Commissioner v. Wilshire Holding Corp., 262 F. 2d 51 (C.A. 9, 1958), reversing T.C. Memo. 1958-214A. Commissioner v. Wilshire Holding Corp., 288 F. 2d 799 (C.A. 9, 1960), reversing T.C. Memo. 1959-176A, rehearing denied 288 F. 2d 799 (C.A. 9, 1961). Estate of Hedrick v. Commissioner, 406 F. 2d 587 (C.A. 9, 1969), reversing T.C. Memo. 1964-228. All of these cases grow out of a "lease" transaction between Walburga Oesterreich, later Walburga Hedrick, *62 and the predecessor of the Wilshire Holding Corporation. The agreement provided for payments over 67 years and 8 months, beginning in 1929. At the end of the term, Wilshire, the lessee, could acquire title by paying an additional $10. In Oesterreich and Wilshire No. 1 it was determined that the agreement was a sale, not a lease. In Wilshire No. 2 it was held that a part of the payments represented interest. In Wilshire No. 3 the payments were allocated between principal and interest on the basis of a sale price of $75,000 and interest at 12 percent. These figures fit the known schedule of payments. In the Hedrick case this Court rendered a decision consistent with the opinion of the Court of Appeals in the third Wilshire case. Once again the Court of Appeals has reversed us, holding that our disposition of this case need not be consistent with Wilshire No. 3. In remanding the case to us this time, the Court of Appeals said in its opinion: As to the Hedrick estate, we hold the division should assume a much higher value than $75,000, the top cash value at the time of the sale. People do not sell property at the same price on long contracts where, as here, there is little assurance *63 of long term responsibility of the purchaser and of course the interest rate is usually higher than the legal rate (meaning the rate charged in absence of contract). The tax court may find something in the range of 7% or 8% reasonable here. Once the $75,000 figure has been discarded, the sale price can only be determined by applying an interest rate to the known schedule of payments and by working backward over the term of years involved. Allocation is therefore simply a matter of choosing the proper interest rate. Despite respondent's willingness to settle this case at either the 7 percent or 8 percent rate suggested by the Court of Appeals, no agreement was reached by the parties. Instead, the remand order has 1224 provided occasion for petitioner's counsel to demonstrate his extreme unhappiness with respondent, this Court, the Court of Appeals, and counsel in the Wilshire cases for ever determining that a part of petitioner's receipts consisted of interest. The brief filed by petitioner's counsel raises a number of points which can be answered in summary fashion. 1. The refusal by the Court of Appeals to approve the whole amount of the deficiency sought by respondent *64 is not a final decision in favor of petitioner. The remand, with instructions to apply an interest rate in the range of 7 or 8 percent, carries with it implied approval of respondent's method of calculation. This is not an entirely new proceeding and respondent is not introducing a new justification for the determined deficiencies. 2. Although use of an 8 percent interest rate instead of 12 percent has the effect of raising the sale price and thus the amount of indebtedness for the years in question, the amount of interest received in any year at issue is less than under the 12 percent schedule. Hence the resulting deficiencies will be less, not greater, than those previously determined. 3. The "assumed fictional selling price" of $117,446.20 in respondent's schedule is derived by applying the 8 percent interest rate to the known schedule of payments and working backward over the 67 years and 8 months of the agreement. The Court of Appeals impliedly approved this method. It produces a lower tax for petitioner than does the $75,000 figure. 4. Whether or not part of petitioner's receipts were uncollectible under California law, she has received the payments and all deficiencies *65 were determined on money received. 5. Any argument that the deficiencies are barred by the statute of limitations is much too late and wholly without merit. 6. Neither of petitioner's schedules is helpful or appropriate because each covers only a fraction of the 67 year, 8 month term and the $676,880 in payments under the agreement. We reject petitioner's computations as not being in accord with the views and remand directive of the Court of Appeals. 7. Petitioner's capital gain in this transaction is the amount by which the principal (sale price) exceeded her basis. It is a part of principal, not something in addition to it. 8. The argument that section 483 applies retroactively to this transaction is not only untimely and inappropriate, but it is also without merit. According to section 224(d) of the Revenue Act of 1964, section 483 applies to payments made after December 31, 1963, with respect to sales made after June 30, 1963. 9. Respondent is not estopped by the Oesterreich decision from treating part of petitioner's receipts as interest instead of gain. That argument was disposed of earlier in this proceeding. See Estate of Hedrick v. Commissioner, 406 F. 2d 587, 589 *66 (C.A. 9, 1969), affirming the Memorandum Opinion of this Court on the collateral estoppel issue [Dec. 26,944(M)]. 10. The taxable year 1945 is not properly at issue in this proceeding, and therefore the Court has no jurisdiction to determine an overpayment for that year. 11. Whatever petitioner's counsel may think of counsel in the Wilshire cases, and however discontented he may be with Wilshire No. 2 and Wilshire No. 3, those decisions cannot be ignored or overturned by this Court. Petitioner's brief contains one argument relevant to the issue of what interest rate should be employed in making the allocations to principal and interest. It is argued that interest in excess of 7 percent is contrary to Article 20, Section 22 of the California Constitution. That section also provides that parties may "contract in writing for a rate of interest not exceeding 10 percent per annum." In 1929, written agreements could provide 12 percent. Initiative Measure, Cal. Stats. 1919, p. lxxxiii, § 1, Cal. Civ. Code § 1916-1 (West 1954). Since the parties to the 1929 transaction never agreed in writing to a rate of interest, other than 7 percent on delinquencies, and since California courts *67 could allow only 7 percent "after demand on judgment," we are not inclined to approve a higher rate of interest. Petitioner has not shown that an interest rate lower than 7 percent would be appropriate. Accordingly, we hold that allocations should be computed by respondent's method at an interest rate of 7 percent. Decision will be entered under Rule 50. 1225