RAY BERT HEDRICK AND MARY H. HEDRICK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3623-70.    Filed December 19, 1974.

*Charles I. Rosin,* for the petitioners.
*Earl Goldhammer,* for the respondent.

398

400

OPINION

RAUM, *Judge:* At the root of this case lies the question whether the payments under the contract of sale, which petitioner received by operation of his deceased wife's will, constitute income in respect of a decedent subject to taxation as provided in section 691, I.R.C. 1954. Pertinent portions of section 691 are set forth in the margin.[2]

---

[2] SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:

  * * *

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

  * * *

(3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of * * * any person who acquired such right * * * by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of * * * such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

(4) INSTALLMENT OBLIGATIONS ACQUIRED FROM DECEDENT.—In the case of an installment obligation received by a decedent on the sale or other disposition of property, the income from which was properly reportable by the decedent on the installment basis under section 453, if such obligation is acquired by the decedent's estate from the decedent or by any person by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent—

(A) an amount equal to the excess of the face amount of such obligation over the basis of the obligation in the hands of the decedent (determined under section 453(d)) shall, for the purpose of paragraph (1), be considered as an item of gross income in respect of the decedent; and

(B) such obligation shall, for purposes of paragraphs (2) and (3), be considered a right to receive an item of gross income in respect of the decedent, but the amount includible in gross income under paragraph (2) shall be reduced by an amount equal to

The generally operative language of these provisions is contained in (a)(1) wherein it is provided that "all items of gross income in respect of a decedent * * * shall be included in the gross income, for the taxable year when received." Further, (a)(3) provides that such income in the hands of the successor will be treated in the same manner as it would have been in the hands of the decedent, e.g., capital gain as against ordinary income, etc. And, finally, (a)(4) makes clear that installment obligations are within the general rule. These provisions are complemented by section 1014(c) whereby property which constitutes a right to receive an item of income in respect of a decedent under section 691 is excepted from the general rule of section 1014(a)[3] which otherwise allows a stepped-up basis for property received from a decedent.

It is the Commissioner's position that the amounts received by petitioner pursuant to the contract of sale represented income in respect of a decedent, and that they were reportable by petitioner in the same manner that Walburga would have been required to treat them had she lived. As to how Walburga would have treated them, the Commissioner continues, that precise question was finally settled by our decision in the litigation which culminated with *Estate of Walburga Hedrick,* 28 T.C.M. 1223, affirmed by the Ninth Circuit, the computations for which allocated portions of each future payment to interest and principal, with interest computed at a 7-percent rate.

Petitioner raises two objections to the Commissioner's determination. With respect to the interest component, he contends that the 7-percent rate underlying the Commissioner's calculations is unduly high and should be redetermined at a lower rate in accordance with the provisions of section 483 and the

---

the basis of the obligation in the hands of the decedent (determined under section 453(d)).

[3] SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(a) In General.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811 (j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.
* * *
(c) Property Representing Income in Respect of a Decedent.—This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691.

regulations thereunder. Wholly aside from the issue of interest, petitioner also argues that on account of the Valuation Agreement by which petitioner agreed to accept a basis of $148,391.89 in the sale contract, the Commissioner is estopped from applying Walburga's basis in the property in order to compute petitioner's capital gain. We think that petitioner's arguments are without merit.

Section 691 embodies a scheme of taxation intended to perpetuate the potential tax liability attached to that income to which a decedent is entitled at the time of his death but which will not be received until some later taxable period. And section 691(a)(3) plainly requires that such income in the hands of the decedent's successor shall be considered to have the same "character which it would have had in the hands of the decedent if the decedent had lived and received such amount." The critical inquiry of section 691 therefore concerns how the decedent, in this case Walburga Hedrick, would have treated such income. It was to the resolution of precisely this question that the extensive litigation noted above was directed. And the outcome of that litigation was that Walburga was required to treat a portion of each payment as interest, calculated at a rate of 7 percent, the remainder to be applied to principal (which included capital gain). Although the taxable years then before the Court were 1947-60, it is not to be supposed that our decision there left Walburga free, had she survived, to relitigate the question of an appropriate interest rate in each succeeding year. By our decision the construction of the contract was settled, and there has been no change in the "legal atmosphere" which would have permitted Walburga, in a later taxable year, to reopen the matter in court. *Commissioner v. Sunnen,* 333 U.S. 591, 600. The suggestion that the addition to the Code of section 483, enacted as part of the Revenue Act of 1964, occasioned the necessary change in legal climate which would have permitted Walburga to relitigate this question is no more valid now than when we rejected it in our earlier decision. 28 T.C.M. at 1224. Thus, had she lived, Walburga would have been bound by our prior decision; and by operation of section 691(a)(3), that decision now applies with equal finality to petitioner. It is therefore our conclusion that the portion of each payment received which is allocable to interest, computed at 7 percent in accordance with our earlier decision, is ordinary income in the hands of petitioner.

Petitioner's position in respect of his basis in the contract is also unpersuasive. By operation of section 691(a)(3) and the exception contained in section 1014(c),[4] the Code clearly requires that petitioner adopt Walburga's unrecovered cost basis in the contract. This result is not altered by the Valuation Agreement. Despite petitioner's contention to the contrary, by its very terms the Valuation Agreement purports only to prevent petitioner from obtaining the Commissioner's acquiescence in a low valuation for purposes of estate taxation and later claiming a higher value in order to obtain a more favorable basis for himself in the determination of his own subsequent income taxes. The very nature of the agreement, however, presupposes that petitioner is entitled to a stepped-up basis in the contract by virtue of section 1014(a). Section 1014(a), however, is inapplicable to petitioner here by reason of section 1014(c). It follows therefrom that the agreement has no bearing on the intended operation of section 691, its effect being to fix a basis only where the Code might otherwise permit. In any event, it is well settled that the Commissioner is not bound by the mistake of his agents but is free to correct an error of law. *Automobile Club v. Commissioner,* 353 U.S. 180, 183-185; *Dixon v. United States,* 381 U.S. 68, 72-73; *Union Equity Cooperative Exchange v. Commissioner,* 481 F. 2d 812, 817 (C.A. 10), affirming 58 T.C. 397, certiorari denied 414 U.S. 1028; *George R. Tollefsen,* 52 T.C. 671, 681, affirmed 431 F. 2d 511 (C.A. 2), certiorari denied 401 U.S. 908.[5] Accordingly, we hold that for purposes of calculating his capital gain on the proceeds of the contract, petitioner must apply as his basis the unrecovered portion of Walburga's $24,235.05 cost, as required by section 691(a)(3).

With respect to the liability of Mary H. Hedrick for taxes relating to income from the contract in issue, section 6013(d)

---

[4] See fn. 3 *supra.*

[5] The situation herein is to be sharply distinguished from one in which the parties have entered into a Closing Agreement under sec. 7121 of the Code whereby the Commissioner may be bound with finality as to the liability of a taxpayer. The Valuation Agreement herein was plainly not intended to be and can by no stretch of the imagination be treated as a Closing Agreement. Not only was it not approved and signed by the Secretary of the Treasury or his delegate as required by sec. 7121(b), *Dorl v. Commissioner,* 507 F.2d 406 (C.A. 2), affirming 57 T.C. 720; *Bank of New York v. United States,* 170 F. 2d 20 (C.A. 3), but it was also fatally defective as a Closing Agreement since it was not executed on the prescribed Form 866 or Form 906, as required by sec. 301.7121-1(d)(1), Proced. & Admin. Regs., and Statement of Procedural Rules, 26 C.F.R. part 601, sec. 601.202(b). See also Rev. Proc. 68-16, 1968-1 C.B. 770, secs. 6.01-6.03. Cf. *H. M. Harrington, Jr.,* 48 T.C. 939, affirmed 404 F. 2d 237 (C.A. 5).

imposes joint and several liability upon both husband and wife where, as here, a joint return has been filed. This is so regardless of either party's relationship to the property giving rise to the income. There is no contention here that she is entitled to the benefits of the so-called innocent spouse provisions in section 6013(e), nor would there appear to be any basis for any such contention. It is therefore held that Mary H. Hedrick is jointly and severally liable for all taxes determined to be due hereunder.

In order to reflect the Commissioner's concessions in respect of the proper cost basis of the contract and the credit for estate taxes paid on account of the contract,

*Decision will be entered under Rule 155.*