WANDA FAYE ALBERTS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alberts v. Commissioner
Docket No. 2923-85.
United States Tax Court
T.C. Memo 1986-483; 1986 Tax Ct. Memo LEXIS 127; 52 T.C.M. (CCH) 665; T.C.M. (RIA) 86483; September 25, 1986. *127 Held: Petitioner has not shown that she is entitled to relief from liability for tax under sec. 6013(e), I.R.C. 1954, the innocent spouse provision. Held further: Respondent has not met his burden of proving that some part of the underpayment of tax was due to fraud within the meaning of sec. 6653(b), I.R.C. 1954. Held further: Respondent has established that the underpayment of tax on petitioner's 1979 tax return was due to negligence or intentional disregard of the tax laws within the meaning of sec. 6653(a), I.R.C. 1954. Respondent has failed to sustain his burden with respect to petitioner's 1980 and 1981 tax years. Wanda Faye Alberts, pro se. Steven Wilson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax under section 6653(b)[1] as follows: Year
Deficiency
Addition to Tax (Sec. 6653(b))
1979
$2,184
$1,092
1980
$2,683
$1,342
1981
$3,130
$1,565
Respondent alleges in his answer that petitioner is alternatively liable for additions to tax under section 6653(a) for 1979 and 1980 and section 6653(a)(1) and (2) for 1981. *129 After concessions, [2] the issues for determination are: 1. Whether petitioner is entitled to relief from liability for tax under section 6013(e), the "innocent spouse" provision; 2. Whether any part of the underpayment of petitioner's income tax for 1979, 1980, and 1981 was due to fraud within the meaning of section 6653(b); and 3. Whether any part of petitioner's underpayment of tax for 1979, 1980, and 1981 was due to negligence or intentional disregard of the tax laws within the meaning of section 6653(a). FINDINGS OF FACT Petitioner Wanda Faye Alberts resided in Merritt Island, Florida, at the time she filed her petition. Petitioner and her deceased husband, Raymond C. Alberts (Raymond), filed joint Federal income tax returns for 1979, 1980, and 1981. [3]
1. 1979
Raymond was employed as a grout mason by the United *130 Service Corp. (USC) on Guantanamo Navy Base in Cuba from mid-1978 into 1979 and received compensation in the amount of $12,875.45 in 1979. While he was in Cuba and petitioner remained in the United States, Raymond placed petitioner's name on his checking account, and she began to manage the family finances for the first time. In 1979, petitioner joined her husband in Cuba and was also employed by USC for 3 or 4 months during that year. Petitioner received compensation for her work as a maid in 1979 in the amount of $1,499. They each received a Form W-2 from USC for the taxable year 1979, but neither petitioner nor Raymond reported income from USC on their joint Federal income tax return. Petitioner knew when she executed the 1979 tax return that the compensation she and her husband received from USC constituted taxable income. 2. 1980
In 1980, Raymond worked for Lin Construction Company and B. J. Hughes Masonry and received wage income in the respective amounts of $5,960.37 and $3,240. Raymond was also self-employed as a mason and home remodeler (masonry business), and devoted 5 or 6 days per week during 1980 to his masonry business. Petitioner was not employed during *131 1980. Petitioner and Raymond kept a joint personal checking account (personal account) and a savings account at Barnett Bank in 1980. On December 30, 1980, Raymond opened a business checking account in the name of Ray's Masonry (business account). During 1980, the personal account checkbook was kept at the couple's residence and was used by both petitioner and Raymond. Raymond deposited the receipts from his masonry business into the personal account and wrote checks on that account to pay expenses incurred in his masonry business. Petitioner was responsible for paying the family's living expenses in 1980 and used the personal account for this purpose. Petitioner also wrote checks to individuals who worked for Raymond and to Rinker Material Corporation, a company which provided materials for Raymond's masonry business. Petitioner recorded each check she wrote in the personal account check register, and balanced the account after each entry and on a monthly basis. In 1980, petitioner and Raymond purchased a three-bedroom house in Merritt Island, Florida, where they lived with their three children: Summer, 8; Shannon, 4; and Stephen, born January 1, 1980. The couple also *132 owned two vehicles, including a truck purchased new in 1979. Petitioner's 1980 joint income tax return includes only the wage income Raymond received from Lin Construction Company and B. J. Hughes Masonry. The return includes no items of income received or expenses incurred in Raymond's masonry business. 3. 1981
Raymond continued to work for B. J. Hughes Masonry in 1981 and operated his masonry business which increased during that year.Petitioner remained unemployed in 1981. During 1981, Raymond deposited income from his masonry business into the business account, which he had opened in December 1980 and wrote checks on that account for masonry business expenses. Raymond wrote checks on that account to petitioner on a weekly basis. Petitioner would then deposit these checks which totaled $9,948.16 in 1981 into the personal account and used these funds to pay monthly bills and for groceries. Petitioner wrote all of the checks on the personal account in 1981. Petitioner's 1981 joint income tax return reflects wage income of $2,240 and gross receipts from Raymond's masonry business of $6,500 and a net profit of $2,460. 4. General
Raymond maintained no books of *133 account for his masonry business. Petitioner was not involved in Raymond's masonry business, but left it to him to keep records, make out payroll, and compute income for the business. Raymond was not forthright with petitioner with regard to his masonry business bookkeeping and finances. Petitioner attempted to ask her husband about these matters, but her inquiries were rebuked. [4]
In each of the 3 tax years at issue, H & R Block (Block) prepared the couple's joint income tax returns. Raymond provided Block with the information used to make out the returns; petitioner knew nothing of the information provided by her husband. Petitioner later picked up the completed returns from Block and signed them, but did not read the returns or examine the figures on the returns. Petitioner also wrote checks to Block for the preparation of the returns when *134 she picked them up. Petitioner concedes that the computations of additional income by respondent in the notice of deficiency for 1979, 1980, and 1981 are correct, except that the couple's living expenses for 1980 and 1981 should be $15,000 in each year rather than $19,769 as computed in the notice of deficiency. Respondent's computation reflects the following taxable income figures: Year
Income Reported
Additional Income
1979
$5,833
$14,441
1980
$9,200
* $17,282
1981
$4,700
* $65,249
OPINION 1. Innocent Spouse Issue
Petitioner does not contest the correctness of respondent's deficiency determination (except as adjusted by stipulation), but contends that she is relieved from any tax liability because she qualifies as an "innocent spouse" under section 6013(e). Section 6013(e)(1), as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802, [5] provides as follows: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, *135 if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. Petitioner has the burden of proving that all four statutory prerequisites for relief have been satisfied. Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). Respondent agrees that petitioner *136 has met the first two requirements: that she made joint returns for the years at issue and that such returns contained substantial understatements of tax attributable to grossly erroneous items. Therefore, we must determine only (1) whether in signing the return petitioner did not know and had no reason to know of the substantial understatement, and (2) whether under the circumstances it would be inequitable to hold petitioner liable for the deficiency. Petitioner must first satisfy the third element of section 6013(e) which requires that the spouse seeking relief under this provision establish that "in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement." Section 6013(e)(1)(C). Based on our evaluation of petitioner's testimony, we find that she had no actual knowledge of the income omitted from the returns. We believe her testimony that she did not examine the figures on the returns before she signed them. However, she was unable to demonstrate that in signing the returns she had no reason to know of the omitted income. With respect to whether she had reason to know of the omitted income, petitioner "must establish *137 that a reasonably prudent taxpayer, with her knowledge of the family finances, would have no reason to know of the omission. Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975)." Estate of Jackson v. Commissioner,72 T.C. 356, 361 (1979). Taking into account all facts of record, we conclude that a reasonably prudent taxpayer, with petitioner's particular knowledge of the family finances, would have reason to know of the omitted income. During each of the years at issue, petitioner and her husband shared a joint personal checking account. Raymond used the personal account during most of 1980 to deposit receipts from his masonry business and write checks for business expenses. Petitioner also wrote checks to masonry business employees and suppliers. Petitioner used the funds deposited in the personal account to pay bills, buy groceries, and pay family expenses. She kept a running balance in the checkbook register after each check she wrote and verified the checkbook balance against bank statements each month. Considering her extensive involvement with the family finances and familiarity with the income and expenses of her husband's masonry *138 business, petitioner must have been aware that the masonry business was producing income. See Sanders v. United States,509 F.2d at 167; Quinn v. Commissioner,62 T.C. 223, 230-231 (1974), affd. 524 F.2d 617 (7th Cir. 1975). Yet, none of the receipts or expenses from Raymond's masonry business were reported on the 1980 return. Petitioner testified that she did not read the return or examine the figures on the return before signing it, and, therefore, had no reason to know of the understatements of omitted business income. While we believe her testimony, she cannot close her eyes to "facts that might give her reason to know of the unreported income." Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Mysse v. Commissioner,57 T.C. 680, 699 (1972). In December 1980, Raymond opened a business checking account for his masonry business and, during 1981, used that account to deposit receipts from the business and pay business expenses. Raymond wrote checks, which totaled $9,948.16 in that year, to petitioner each week on the business account. Petitioner deposited the checks in the personal account and *139 used the funds to pay the family living expenses. Petitioner testified that she was not involved in her husband's masonry business and her attempts to ascertain information about the business finances were rebuked. However, petitioner was aware that Raymond devoted 5 or 6 days per week to his masonry business in 1980 and that his business increased in 1981. In addition, petitioner could personally account for at least $9,948.16 of the business receipts which she deposited in the personal account she alone used in 1981. Yet, the 1981 return reflects only $6,500 in gross receipts for the masonry business. Had petitioner examined the return and compared it to the personal account checkbook which she kept, or asked the tax return preparer to do so, the discrepancy would have been obvious. While we do not expect petitioner to have perfect knowledge of the family finances, Mysse v. Commissioner,57 T.C. at 699, and we understand that her husband was not forthright with petitioner with respect to his business records and finances, [6] petitioner had possession of sufficient information to cause her to question the amount of income reported on the 1981 return and with *140 reasonable inquiry would have discovered the omission. Furthermore, even "a minimal involvement in a family's financial affairs can satisfy the 'reason to know' standard." Shea v. Commissioner,780 F.2d 561, 567 (6th Cir. 1986), affg. in part and revg. and remanding in part a Memorandum Opinion of this Court; Sanders v. United States,509 F.2d at 167-168. We conclude, therefore, that a reasonably prudent taxpayer exposed to the facts petitioner was would have reason to know of the income omitted on the 1980 and 1981 returns. Accordingly, we find that petitioner has failed to satisfy the requirements of section 6013(e)(1)(C). *141 With respect to the 1979 tax year, the evidence reflects not only petitioner's involvement with family finances, particularly while her husband resided in Cuba and she remained in the United States, but also omission of petitioner's own income from the 1979 return. During that year, both Raymond and petitioner worked for USC in Cuba earning wages of $12,875.45 and $1,499, respectively. Petitioner was aware that the income they earned in Cuba was taxable. Yet, none of the USC income was included on the 1979 return and the Forms W-2 reporting the USC income were likewise absent. Had petitioner looked at the return when she signed it, she would have discovered the omitted income or at least the omitted Forms W-2 and been alerted to the omissions. Petitioner is not excused from signing a return omitting her own income, as well as her husband's, just because she did not examine the return and relied on Raymond to provide information necessary to prepare the return. Terzian v. Commissioner,72 T.C. at 1170. A prudent taxpayer in similar circumstances would have reason to know of the income omitted from the 1979 return. The fourth test under the innocent spouse provision *142 is whether under the circumstances it would be inequitable to hold the other spouse liable for the deficiency. Sec. 6013(e)(1)(D). Because petitioner must meet her burden with respect to all four prongs of the innocent spouse test, and because she failed to meet the requirements of the third prong, sec. 6013(e)(1)(C), we need not decide whether she meets the inequitable test. Estate of Jackson v. Commissioner,72 T.C. 356, 362 (1979). 2. Addition to Tax Under Section 6653(b): Fraud
Section 6653(b) provides for the imposition of a 50-percent addition to tax if any part of any underpayment of tax is "due to fraud." [7] Under this statute, fraud is established if it is shown by clear and convincing evidence that the taxpayer intended to evade taxes believed to be owing by conduct designed to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004-1005 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). In the case of a joint return, *143 the section 6653(b) addition to tax does not apply to a spouse unless some part of the underpayment is due to the fraud of that spouse. The burden of showing fraud by clear and convincing evidence rests with respondent. Sec. 7454. Respondent has failed to make the requisite showing. The record shows, as we have discussed, that petitioner had no actual knowledge of the omissions on the 1979, 1980, and 1981 returns. Petitioner was not involved in her husband's masonry business and was discouraged from inquiring into Raymond's business recordkeeping. Petitioner consistently relied on her husband to keep business records, *144 calculate business income, and provide the tax return preparer with complete information. Petitioner signed the returns each year, but did not read or examine the figures on the returns. Ignorance of the contents of the tax returns is inconsistent with a specific intent to defraud, a requisite for sustaining the section 6653(b) addition to tax. While respondent asserts that consistent and substantial understatements of income and inaccurate and inadequate recordkeeping are strong evidence of fraud, Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), affg. a Memorandum Opinion of this Court, he has failed to demonstrate any intent to defraud on the part of petitioner. Although intent is a state of mind, it is nonetheless a fact to be proven by the evidence.It must appear as a positive factor. In determining the presence or absence of fraud the trier of the facts must consider the native equipment and the training and experience of the party charged. The whole record is to be searched for evidence of the intent to defraud. * * * Iley v. Commissioner,19 T.C. 631, 635 (1952). Section 6653(b) requires respondent to prove, in the *145 case of joint returns, that some part of the underpayment of tax is due to fraud on the part of the spouse charged. While we do not pass on whether Raymond's actions amounted to fraud, we find that respondent has not met his burden with respect to petitioner. 3. Addition to Tax Under Section 6653(a): Negligence
Section 6653(a)(1) provides for the imposition of a 5-percent addition to tax if any part of any underpayment is due to negligence or intentional disregard of the rules but without intent to defraud. Section 6653(a)(2), applicable to petitioner's 1981 tax year only, provides for a separate addition to tax equal to 50 percent of the interest payable on that portion of the underpayment attributable to negligence or intentional disregard of the rules. Because we have found no intent to defraud on petitioner's part and respondent raised this issue for the first time in his answer, respondent has the burden of proving negligence by a preponderance of the evidence. Rule 142(a), Tax Court Rules of Practice and Procedure
In 1979, both petitioner and her husband were employed by USC in Cuba. Petitioner was aware that her wages constituted taxable income; however, no USC *146 wages paid to petitioner or Raymond were reported on their 1979 return and no Forms W-2 for USC wages were attached to the return. Petitioner's contention that she had not received the Forms W-2 at the time the return was filed does not excuse her from reporting that income. Therefore, we find that petitioner's failure to report her own wage income on her 1979 return was due to negligence. With respect to petitioner's 1980 and 1981 tax years, however, respondent has failed to establish petitioner's liability for the addition to tax. Respondent argues that the failure of petitioner and her husband to maintain proper books and records in regard to Raymond's masonry business constitutes negligence or intentional disregard of the rules. However, petitioner had little or no involvement in her husband's masonry business and was discouraged from inquiring into his business recordkeeping. She relied on her husband to keep his business records, calculate business income, and assist the tax return preparer in preparing their returns. [8] We conclude that respondent has failed to prove that any part of the underpayments of tax for petitioner's 1980 and 1981 tax years was attributable to *147 negligence. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. The parties have stipulated that the computation of additional income for 1979, 1980, and 1981 attached to the notice of deficiency is correct, except that petitioner's personal living expenses for 1980 and 1981 should be $15,000 in each year rather than $19,769.↩
3. Petitioner's husband, Raymond C. Alberts, died on June 21, 1984.↩
4. Petitioner testified: As far as anything on his business goes, -- He was his own person. He was very strong-headed. He done things his way. And if I would suggest, you know, maybe, that's not right, or maybe check with somebody, he would always say, well, this is none of your concern, this is my business. I'll do it my way.↩
*. These figures have been adjusted to reflect the amount of personal living expenses stipulated by the parties.↩
5. The amendments to sec. 6013(e)↩ made by the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, were made applicable to all tax years to which the Internal Revenue Code of 1954 applies.
6. Respondent argues that Raymond's secrecy with respect to his business affairs put petitioner on notice as to omitted income. See Adams v. Commissioner,60 T.C. 300, 303 (1973). Adams is distinguishable from the instant case because in entrusting the personal account checkbook and bill-paying responsibilities to petitioner, Raymond's actions were inconsistent with an intent to conceal the sources and amounts of family income. Sanders v. United States,506 F.2d 162, 167-168↩ n. 11 (5th Cir. 1975).
7. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013↩, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.
8. We recognize that where a joint return is made, the liability with respect to tax, including additions to tax, in joint and several. Sec. 6662((a)(2); Hedrick v. Commissioner,63 T.C. 395, 403-404 (1974). Consequently, if a taxpayer-husband is shown to be negligent, his wife may be liable for the sec. 6653(a)↩ addition to tax regardless of her lack of involvement in her husband's business. In the instant case, however, respondent asserted no negligence against Raymond, and was therefore required to show that petitioner herself was negligent.