MORTON LEVIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levin v. Commissioner
Docket No. 5769-88
United States Tax Court
T.C. Memo 1990-226; 1990 Tax Ct. Memo LEXIS 260; 59 T.C.M. (CCH) 526; T.C.M. (RIA) 90226; May 7, 1990, Filed *260 Decision will be entered for the respondent. Morton Levin, pro se. Drita Tonuzi and Robert B. Marino, for the respondent. RAUM, Judge. RAUM
*751 MEMORANDUM OPINION The Commissioner determined a deficiency of $ 6,863 in the joint Federal individual income tax of Ellen Levin and Morton Levin for the taxable year 1981. Although the petition named both Ellen Levin and Morton Levin as petitioners, the case was *261 dismissed for lack of jurisdiction as to Ellen Levin, who did not sign or subsequently ratify the petition. For convenience, the 1981 joint return will be referred to as petitioner Morton Levin's return. The sole issue is the validity of the Commissioner's timely notice of deficiency, in which the only contested adjustments were tax shelter adjustments relating to a partnership, Whitehall Dover Films, Ltd. (Whitehall Dover), of which petitioner was a partner, where petitioner had previously executed a Form 1902-B, Report of Individual Income Tax Examination Changes, consenting to the assessment and collection of tax based upon nonshelter adjustments. The case was submitted fully stipulated. On or about January 31, 1983, an audit of petitioner's 1981 taxable year was conducted and resulted in the issuance of a Form 1902-B consisting of nonshelter adjustments (interest income, interest deductions, business expense deductions, and miscellaneous deductions), to which petitioner agreed. Petitioner signed that Form 1902-B on February 7, 1983, and paid the $ 822 increase in tax resulting from those adjustments. Form 1902-B contained the following language:
Although this report *262 is subject to review, you may consider it as your notice that your case is closed if you are not notified of an exception to these findings within 45 days after a signed copy of this report or a signed waiver, Form 870, is received by the district director. If you agree, please sign one copy of this report, and return it in the enclosed envelope. Keep the other copy with your records. *752 On or about September 7, 1983, an audit for the taxable years 1980 and 1981 of Whitehall Dover was completed and resulted in the disallowance of all losses and credits claimed. Petitioner had claimed deductions and a credit on his 1981 return in respect of his allocable share of those 1981 items disallowed to Whitehall Dover. Prior to the expiration of the statute of limitations for 1981, petitioner agreed on March 20, 1985, to extend the period of limitations for 1981 to December 31, 1986, by executing a restricted Form 872. The restriction provided, to the extent relevant here, that: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (a) the taxpayer's share of any item of income, gain, loss, deduction, or credit of, or distribution *263 from any partnership (or any organization treated by the taxpayer as a partnership on the taxpayer's tax return), small business corporation and/or fiduciary return. * * * Subsequently, on September 24, 1986, petitioner further agreed to extend the period of limitations for 1981 to June 30, 1988, by executing a second Form 872, which incorporated by reference the restriction contained in the first. The notice of deficiency, which disallowed tax shelter losses and an investment credit relating to petitioner's investment in Whitehall Dover in the amounts of $ 21,445 and $ 458, respectively, for the taxable year 1981 was sent to petitioner on December 30, 1987. Petitioner concedes not only these disallowances in full, but also the application of the increased interest rate for tax motivated transactions under the provisions of section 6621(c) of the Internal Revenue Code. [1] However, he argues that his signed Form 1902-B precludes the determination of the deficiency with respect to the tax shelter items, and asserts that Form 1902-B "is a true closing agreement." *264 Section 7121[2] is captioned "Closing Agreements." Subsection (a) authorizes the Secretary "to enter into an agreement in writing with any person relating to the liability of such person * * * in respect of any internal revenue tax for any taxable period." And subsection (b) provides that "If such agreement is approved by the Secretary * * * such agreement shall be final and conclusive." Section 301.7121-1(d), Proced. & Admin. Regs., establishes the procedure to be used with respect to closing agreements, and provides that "All closing agreements shall be executed on forms prescribed by the Internal Revenue Service." The prescribed forms are Form 866, "Agreement as to Final Determination of Tax Liability," and Form 906, "Closing Agreement on Final Determination Covering Specific Matters." Section *753 601.202(b), Statement of Procedural Rules. *265 It is clear that Form 1902-B is not a closing agreement under section 7121. Form 1902-B is a written report informing the taxpayer of the auditor's proposed adjustments. By signing the report, petitioner agreed to the adjustments contained therein and consented to an immediate assessment and collection of tax resulting from the adjustments. It was not signed by the Secretary or his delegate. Unlike Forms 866 and 906, Form 1902-B is not prescribed by the Internal Revenue Service to be used as a closing agreement. On its face, it does not even purport to be a closing agreement. What we said in Hedrick v. Commissioner, 63 T.C. 395, 403 n.5 (1974), with respect to a."Valuation Agreement" is equally applicable to Form 1902-B involved herein: The situation herein is to be sharply distinguished from one in which the parties have entered into a Closing Agreement under sec. 7121 of the Code whereby the Commissioner may be bound with finality as to the liability of a taxpayer. The Valuation Agreement herein was plainly not intended to be and can by no stretch of the imagination *266 be treated as a Closing Agreement. Not only was it not approved and signed by the Secretary of the Treasury or his delegate as required by sec. 7121(b), Dorl v. Commissioner, 507 F.2d 406 (C.A. 2), affirming 57 T.C. 720; Bank of New York v. United States, 170 F.2d 20 (C.A. 3), but it was also fatally defective as a Closing Agreement since it was not executed on the prescribed Form 866 or Form 906, as required by sec. 301.7121-1(d)(1), Proced. & Admin. Regs., and Statement of Procedural Rules, 26 C.F.R. part 601, sec. 601.202(b). See also Rev. Proc. 68-16, 1968-1 C.B. 770, secs. 6.01-6.03. Cf. H. M. Harrington, Jr., 48 T.C. 939, affirmed 404 F.2d 237 (C.A. 5). The point has been considered in a number of cases and has been treated as settled for many years. The issue was explored in Hudock v. Commissioner, 65 T.C. 351 (1975), where the Court said (at 362): Section 7121 authorizes the Secretary or his delegate to enter into an agreement in writing, referred to *267 as "closing agreement," with any person relating to the tax liability of such person for any taxable period, and provides that if such agreement is approved by the Secretary or his delegate, such agreement shall be final and conclusive. Section 301.7121-1(d), Proced. & Admin. Regs., establishes the procedure to be used with respect to closing agreements, and pro vides that all closing agreements shall be executed on forms prescribed by the Internal Revenue Service. The form prescribed for closing agreements by the Internal Revenue Service is Form 906, the title of which indicates that it is a closing agreement. Sec. 601.202, Proced. & Admin. Regs. It is well established that the statutory procedure provides the exclusive method by which a closing agreement may be accorded finality. McIlhenny v. Commissioner, 39 F.2d 356 (3d Cir. 1930), affg. 13 B.T.A. 288 (1928); [10]H. M. Harrington, Jr., 48 T.C. 939 (1967), affd. 404 F.2d 237 (5th Cir. 1968); Estate of Ella T. Meyer, 58 T.C. 69 (1972). As stated in Knapp-Monarch Co. v. Commissioner, 139 F.2d 863, 864 (8th Cir. 1944): "The very *268 fact that Congress has provided a way in which the Internal Revenue Department may bind itself, precludes the possibility of its being bound by some other procedure." For reasons similar to those discussed in Hudock v. Commissioner, supra, at 362-363, Form 1902-B involved herein is no closer to qualifying as a "closing agreement" than Form 4549 involved in that case. See also Holland v. Commissioner, 70 T.C. 1046, 1048-1049 (1978), affd. 622 F.2d 95 (4th Cir. 1980). We hold that Form 1902-B is not a closing agreement, and does not preclude the IRS from examining, within the period of the statute of limitations, as extended, petitioner's 1981 tax liability, particularly in respect of the uncontested tax shelter items in this case. To be sure, Form 1902-B contains language to the effect that the taxpayer "may consider it as your notice that your case *269 is closed if you are not notified of an exception to these findings within 45 days after a signed copy of this report * * * is received by the District Director." Petitioner relies heavily upon the statement that he was entitled to consider the case as "closed" upon signing Form 1902-B, paying the amount claimed, and failing to receive an adverse notice during the 45-day period. But, as we have indicated above, only a closing agreement under section 7121, executed strictly in accord with its provisions and relevant regulations is entitled to the finality that petitioner seeks here. Form 1902-B is no substitute therefor. Cf. Wasserstrom v. Commissioner, T.C. Memo. 1986-417, reaching the same result in respect of Form 1902-E which contained virtually the same relevant language as that in Form 1902-B except that the 45-day period in the latter was stated to be 30 days in Form 1902-E. Petitioner's brief appears to present two other issues not theretofore raised in the pleadings. We could therefore appropriately refuse to address them. In any event, they appear to be wholly *270 without merit, and we comment briefly upon them. Petitioner contends that he "relied on the integrity of the I.R.S. Agreement [Form 1902-B]" that his case was "closed," perhaps attempting to argue that equitable estoppel may be applicable here against the Commissioner. However, petitioner has not shown any "reliance," and indeed his execution of the two Forms 872 (on March 20, 1985, and on September 24, 1986) which extended the period of limitations for 1981 to December 31, 1986, and June 30, 1988, respectively, suggests that he did not "rely" upon Form 1902-B, as that term is understood in the context of the doctrine of equitable estoppel. In any event, the burden of proof in respect of any such issue is upon the party raising it, and such burden was certainly not carried here. In his opening brief petitioner's request for findings of fact contains the naked statement that "Internal Revenue Service did not make proper application to reopen this return." The point is nowhere developed in the brief, except to the extent perhaps that the preliminary page of "Citations" lists United States v. Heffner, 420 F. 2d 809 (4th Cir. 1969); *271 United States v. Leahey, 434 F. 2d 7 (1st Cir. 1979); Rev. Proc. 68-28, 1968-2 C.B. 912; Rev. Proc. 85-13, 1985-1 C.B. 184; and Statement of Procedural Rules, sec. 601.105(j). The point is not otherwise dealt with in the brief. In his reply brief in this connection, petitioner merely quotes from Statement of Procedural Rules, sec. 601.109, and *754 from Rev. Proc. 85-13, and states without further elaboration that "I.R.S. never followed these procedures or made any attempt to reopen this case." The two cited cases, Heffner and Leahey may readily be disposed of. Both are criminal tax evasion cases and involve the consequences of IRS agents' failure to comply with the self-imposed specified procedures such as the requirement to give Miranda warnings as to constitutional rights in a noncustodial situation to targets of a criminal tax investigation. The irrelevance of such cases in civil litigation such as the present has been recognized by this Court. Schwager v. Commissioner, 64 T.C. 781, 787 (1975); Bridges v. Commissioner, T.C. Memo. 1983-763. Moreover, the First Circuit has overruled *272 Leahey in United States v. Irvine, 699 F. 2d 43, 46 (1st Cir. 1983), and it is highly doubtful that Heffner can now be considered good law in the light of United States v. Caceres, 440 U.S. 741 (1979). As to the directives in Rev. Proc. 85-13, 1985-1 C.B. 514, (which superseded Rev. Proc. 68-28, 1968-2 C.B. 912) [3] and the two Statements of Procedural Rules, secs. 601.105(j) and 601.109, it is sufficient to note that compliance with such procedural rules is merely directory and not mandatory. See, e.g., Pleasanton Gravel Co. v. Commissioner, 64 T.C. 510, 529 (1975), affd. 578 F. 2d 827 (9th Cir. 1978), and cases cited therein. Moreover, there was no second inspection of petitioner's books of account or a reopening of a "closed" case. The deficiency determined merely took into account the results of an examination of the return of a partnership in which petitioner had an interest. We need not pursue the matter further. *273 Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references herein are to the Internal Revenue Code as in effect or applicable to the year here involved.↩
2. SEC. 7121. CLOSING AGREEMENTS. (a) Authorization. -- The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts), in respect of any internal revenue tax for any taxable period. (b) Finality. -- If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and except upon a showing of fraud or malfeasance, or misrepresentation of a material fact -- (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by an officer, employee, or agent of the United States, and (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.↩
10. Cited with approval in Burnet v. Porter, 283 U.S. 230↩ (1931).
3. Rev. Proc. 68-28 was superseded by Rev. Proc. 72-40, 1972-2 C.B. 819, which was superseded by Rev. Proc. 74-5, 1974-1 C.B. 416, which was superseded by Rev. Proc. 81-35, 1981-2 C.B. 588, which was superseded by Rev. Proc. 83-19, 1983-1 C.B. 677, which was superseded by Rev. Proc. 85-13, 1985-1 C.B. 514↩.