LEON E. AND MARY M. BOOMERSHINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LMB ENTERPRISES, Inc., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boomershine v. Commissioner
Docket Nos. 7844-84; 7845-84.
United States Tax Court
T.C. Memo 1987-384; 1987 Tax Ct. Memo LEXIS 382; 54 T.C.M. (CCH) 43; T.C.M. (RIA) 87384; August 5, 1987. N. Franklyn Casey and Robert E. Jones, for the petitioners. Juandell D. Glass, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: These related cases were consolidated for purposes of trial, briefing, and opinion. In docket number 7844-84, respondent determined deficiencies in petitioners Leon E. and Mary M. Boomershine's Federal income tax as indicated below: SECTION 6651(a)(1) [1]
SECTION 6653(a)
YEAR
DEFICIENCY
ADDITION TO TAX
ADDITION TO TAX
1975
$ 95,676.90
$ 23,919.23
$ 4,902,81
1976
35,475.76
0   1,773.79
1977
66,410.47
18,544.13
3,708.83
*383 In docket number 7845-84, respondent determined deficiencies in petitioner LMB Enterprises, Inc.'s Federal income tax as indicated below: TAXABLE YEAR
SECTION 6651(a)(1)
SECTION 6653(a)
ENDED
DEFICIENCY
ADDITION TO TAX
ADDITION TO TAX
March 31, 1976
$ 9,832.74
$ 2,458.19
$ 844.44
March 31, 1977
8,112.21
1,216.83
622.60
The issues are: (1) whether petitioner LMB Enterprises, Inc., is entitled to certain advertising deductions and (2) whether petitioners Leon E. and Mary M. Boomershine are required to recognize the gain from the sale of certain real property and improvements thereon. [2]
*384 FINDINGS OF FACT Petitioners Leon E. Boomershine ("Leon") and Mary M. Boomershine ("Mary"), husband and wife, resided in Coweta, Oklahoma, at the time they filed their petition herein and are calendar year taxpayers. Petitioner LMB Enterprises, Inc. ("LMB") had its principal place of business in Tulsa, Oklahoma, at the time it filed its petition herein. LMB is a corporation organized and existing under the laws of the State of Oklahoma, uses as its taxable years the fiscal years ending on March 31, and is wholly owned by Leon and Mary. LMB is engaged in the trade or business of erecting metal buildings. [3] Leon is the president of LMB and controls its day-to-day operations. LMB's gross receipts for its taxable years ended March 31, 1976 and 1977 were $ 228,926 and $ 193,563, respectively. For the two corporate years at issue, LBM advertised by means of owning and racing cars which had the following words pained thereon: BOOMERSHINE STEEL ERECTORS. Leon was advised by four businessmen that race car advertising was an effective means *385 of advertising. Many of the people who attended the races in the Tulsa, Oklahoma, area were businessmen and several of those businessmen were in the business of erecting or selling metal buildings. Leon made several business contacts at the races as a result of the advertisement and LMB constructed at least two metal buildings as a result of such contacts. LMB deducted as an advertising expense the costs of acquiring, maintaining, and racing such cars, which costs were $ 26,952 for its taxable year ended March 31, 1976, and $ 25,871 for its taxable year ended March 31, 1977. On January 30, 1975, lots 1 through 14, Block 50, Alsuma Addition to the City of Tulsa (hereinafter the "14 lots"), were sold to BCD Enterprises, an unrelated party, for $ 150,000. The 14 lots were titled in Leon and Mary's names and contained on them metal buildings purchased by and erected by LMB. The $ 150,000 selling price was satisfied by 42 payments all made in Leon's name. A payment of $ 4,000 was made in December of 1974. [4] Four payments totaling $ 40,620.92 were made in January of 1975. No payments were made in February. Although the purchaser of the lots was obligated to pay 50 monthly installments *386 of $ 2,500, principal only, on the first of each month beginning on March 1, 1975, no payment was made in March of 1975. On April 1, 1975, the purchaser made a $ 5,000 payment. The check by which such payment was made indicates that $ 2,500 was for the March 1, 1975 installment and $ 2,500 was for the April 1, 1975 installment. The total amount of the payments made in 1975, principal only, was $ 70,620.92. The remaining payments were made after the close of 1975. Twenty-two of the payments, totaling $ 62,300 in principal only, were deposited into LMB's checking account, which served as Leon and Mary's personal checking account as well. [5] The remaining payments were deposited to Leon's five savings accounts, [6] were cashed, were used to purchase certificates of deposit, or were not traceable to their final disposition. In 1976, lots 13 through 18, Block 49, Alsuma Addition to the City of Tulsa (hereinafter *387 the "6 lots"), were sold to BCD Enterprises for $ 12,000. The 6 lots were titled in Leon and/or Mary's names. In October of 1977, lots 4 and 7, Block 51, Alsuma Addition to the City of Tulsa (hereinafter the "2 lots"), were sold to BCD Enterprises for $ 4,000. The 2 lots were titled in Leon's name. The gain from the sale of the 14 lots, the 6 lots, and the 2 lots was either reported on LMB's corporate Federal income tax returns or was not reported at all. In the notice of deficiency sent to LMB, respondent determined, inter alia, that LMB was not entitled to deduct as an advertising expense the cost of acquiring, maintaining, and racing cars with "BOOMERSHINE STEEL ERECTORS" printed thereon. In the notice of deficiency sent to Leon and Mary, respondent determined, inter alia, that Leon and Mary were taxable on the gain realized from the sale of the 14 lots, the 6 lots, and the 2 lots. OPINION The first issue is whether LMB is entitled to deduct as an advertising expense the costs incurred with respect to car racing. Respondent contends that such costs are not deductible because they are not ordinary and necessary within the meaning of section 162. Respondent does not contend, *388 however, that such costs are additional compensation to Leon or constructive dividends to Leon. [7] Petitioners contend that such costs are ordinary and necessary and are thus deductible by LMB pursuant to section 162. The burden of proof is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). "Ordinary" has been interpreted to mean that the expense must have a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). "Necessary" has been interpreted to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger,320 U.S. 467, 471 (1943); Carbine v. Commissioner,83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). [8] Where an expenditure is, by its nature, ordinary and necessary, *389 but is unreasonable in amount, only the reasonable portion qualifies for deduction under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). [9]
Petitioners have established that there is a proximate relationship between the car racing expenditures and LMB's business of erecting metal buildings. Several of the people who attended the races in the Tulsa, Oklahoma, area were in the business of erecting or selling metal buildings. Petitioners have also established that the car racing expenditures were helpful to LMB's business. Several contacts were made through the advertisements, which contacts resulted in at least two contracts for *390 the construction of metal buildings by LMB. Petitioners have not, however, established that the car racing expenditures were reasonable in amount. LMB's gross receipts and advertising expenditures for the two corporate years at issues were as follows: YEAR ENDED
YEAR ENDED
3-31-76
3-31-77
Gross Receipts
$ 228,926
$ 193,563
Advertising Expenditures
26,952
25,871
Based on the sparse record as developed by petitioner, which record contains no information as to the average amount spent on advertisement by entities engaged in similar trades or businesses, we conclude that LMB is entitled to deduct only $ 10,000 of its car racing expenditures for each of the corporate years at issue as an advertising expense pursuant to section 162. [10] Cf. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). The second issue *391 is whether Leon and Mary are required to recognize gain from the sale of the 14 lots, the 6 lots, and the 2 lots (hereinafter the "lots"). Petitioners contend that the lots belong to LMB, acquired by way of a capital contribution from Leon and Mary. Respondent contends that Leon and Mary are the true owners of the lots and should be taxed on the gain attributable to the sale thereof. The burden of proof is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). During the year of the sale of the 14 lots, section 453 allowed a taxpayer to report the gain from the sale of real property pursuant to the installment method if, inter alia, not more than 30 percent of the selling price was received in the year of the sale. [11] For Leon and Mary's taxable year during which the 14 lots were sold, the 1975 calendar year, more than 30 percent of the selling price was paid. For LMB's taxable year during which the 14 lots were sold, LMB's fiscal year ending March 31, 1975, 29.75 percent of the selling price was paid. On April 1, 1975, the day after the close of LMB's taxable year during which the 14 lots were sold, a payment of $ 5,000 was made, which payment, *392 together with the previous payments, exceeded 30 percent of the selling price. Petitioners argue that these facts clearly establish the intention that the sale of the 14 lots be made by LMB, not Leon and Mary, as LMB could meet the 30-percent requirement for installment sales treatment, but Leon and Mary could not. We do not agree. We are convinced that LMB could satisfy the 30-percent requirement for installment sales treatment solely because a payment made by the purchase of the 14 lots was late. A portion of the April 1, 1975, payment $ 2,500, was for an installment due March 1, 1975. Had the March 1, 1975, installment not been late, more than 30 percent of the selling price would have been received prior to the close of LMB's taxable year during which the 14 lots were sold, and LMB could not have met the 30-percent requirement for installment sales treatment. The fact that LMB could, and Leon and Mary could *393 not, have satisfied the 30-percent requirement is attributable to a late payment, not tax planning. Accordingly, we do not consider this fact indicative of an intent that the sale of the 14 lots be made by LMB. All of the remaining facts indicate that the sale of the lots was made by Leon and Mary. Title to the lots was held in Leon and Mary's names. See Griffiths v. Helvering,308 U.S. 355, 358 (1939)(gain from property is taxable to him who commands such property and command "may be exercised through specific retention of legal title"). No documentary evidence was introduced to show that the lots were the subject of a capital contribution to LMB. The sales documents with respect to the 14 lots indicate that Leon and Mary, not LMB, were the sellers. These sales documents do not even make reference to LMB, much less indicate that Leon and Mary were acting as agents for LMB. Only $ 62,300 of the $ 150,000 of proceeds from the sale of the 14 lots was deposited into LMB's corporate account. This fact does not necessarily indicate that LMB had control or use of the $ *394 62,300, as LMB's corporate account served as Leon and Mary's personal account as well. The balance of the proceeds from the sale of the 14 lots, in excess of $ 85,000, was diverted from LMB's corporate account. Petitioners failed to produce the acts of sale of the 6 lots and the 2 lots and failed to prove the disposition of the proceeds from the sales of the 6 lots and the 2 lots. We hold that petitioners have failed to prove that the gain from the sale of the lots is not taxable to Leon and Mary. Respondent's determination in this regard is sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are the Tax Court Rules of Practice and Procedure. ↩
2. The notices of deficiency and the petitions indicate that several other possible issues are present in this case. Petitioners introduced no evidence at trial indicating that respondent's determinations, from which the possible issues arose, were incorrect. Further, petitioners' opening and reply briefs make no reference to these issues. Since these possible issues were not argued on brief, they are deemed conceded. See Money v. Commissioner, 89 T.C.    (July 6, 1987) (slip op. at 4); Atlee v. Commissioner,67 T.C. 395, 396, n.2 (1976); Hedrick v. Commissioner,63 T.C. 395, 396-397 (1974); Alexander v. Commissioner,61 T.C. 278, 288, n.6 (1973); and Estate of Juster v. Commissioner,25 T.C. 669↩ (1955). 3. Prior to LMB's incorporation in 1969, petitioner operated the trade or business of erecting metal buildings as a sole proprietorship. ↩
4. This payment was for earnest money paid at the time the agreement to sell was signed. ↩
5. During the years at issue, Leon and Mary did not have a personal checking account. ↩
6. Three of Leon's five savings accounts were in his name as trustee for his three children. ↩
7. Cf. Brallier v. Commissioner,T.C. Memo. 1986-42↩. 8. This Court has on several occasions held that car racing expenditures are deductible under section 162 as advertising expenses. See Brallier v. Commissioner,T.C. Memo. 1986-42; Hestnes v. Commissioner,T.C. Memo. 1983-727; and Lang Chevrolet Co. v. Commissioner,T.C. Memo. 1967-212. See also Krauskopf v. Commissioner,T.C. Memo. 1984-386↩. 9. See also Brallier v. Commissioner, supra.↩
10. We note that $ 10,000 of advertising expenditures per year is roughly 4 to 5 percent of LMB's gross receipts. See Brallier v. Commissioner,T.C. Memo. 1986-42, where advertising expenditures not exceeding 3 percent of the taxpayer's gross receipts were allowed as deductions pursuant to section 162↩. 11. Section 453↩ has since been amended by, inter alia, the Installment Sales Revision Act of 1980, Pub. L. No. 96-471, 94 Stat. 2247 (1980). There is no longer a requirement that not more than 30 percent of the selling price be received in the year of the sale.