SHARON S. VOSS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Voss v. Commissioner
Docket No. 33080-85.
United States Tax Court
T.C. Memo 1987-445; 1987 Tax Ct. Memo LEXIS 442; 54 T.C.M. (CCH) 417; T.C.M. (RIA) 87445; September 2, 1987. *444 Charles F. Murray, for the petitioner. James Gehres, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: ADDITIONS TO TAX
Section
Section
Section
Year
Deficiency
6651(a)(1)[1]
6653(a)[2]2
6654
1980
$ 810.20
$ 202.55
$ 40.51
$ 51.61
1981
816.00
204.00
40.80
62.52
1982
830.00
207.50
41.50
80.80
1983
842.62
210.66
42.13
51.56
*445 The issues are (1) whether petitioner had unreported income for the 1980 and 1981 taxable years; (2) whether petitioner is entitled to exemptions for her three children; and (3) whether respondent's determinations of additions to tax for the 1980 and 1981 taxable years should be sustained. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Longmont, Colorado, at the time the petition herein was filed. Petitioner filed no returns for the years in issue. Petitioner is, and was during the years in issue, married, but petitioner's husband is not a party to this case. Petitioner is an intelligent woman and has a degree in singing and music. Respondent determined in the notice of deficiency sent to petitioner that petitioner had income from the National Commodity and Barter Association ("NCBA") during the years at issue as follows: YEAR
AMOUNT
1980
[3] $ 5,215
1981
5,000
1982
5,230
1983
5,397
*446 The NCBA, which was established in 1979, is an "unincorporated association of people that are concerned with the abuses of the IRS and the Federal Reserve." Petitioner has been associated with the NCBA since it was established. During the years in issue, petitioner handled the monthly mailings of NCBA newsletters, responded orally or in writing to inquiries from people about the operations of NCBA, and was primarily in charge of NCBA's checking account, having signatory authority over the account and custody of the checkbook. Petitioner also recruited new members for the NCBA. Members of the NCBA pay dues. The parties stipulated that petitioner -received in 1980 13 checks totaling $ 4,938 from an NCBA account. Petitioner testified that these 13 checks were reimbursement for expenditures made by petitioner on behalf of NCBA. Petitioner could not further explain the checks and offered no documentary evidence, such as NCBA records, to substantiate her testimony. The parties stipulated that petitioner received in 1981 three checks totaling $ 5,000 from an NCBA account. Petitioner testified that these checks were reimbursement to her husband who purchased silver on behalf *447 of the NCBA. Petitioner could not explain why the checks were payable to her instead of her husband. Petitioner's husband corroborated petitioner's testimony but stated he kept no records of the transactions. Petitioner offered no documentary evidence to substantiate her and her husband's explanation of the three 1981 checks. Petitioner testified that she was never paid any salary or compensation for the services she had performed for the NCBA and that she was "pretty sure" she never received compensation for recruiting new members for NCBA. To impeach petitioner's testimony, respondent introduced four checks drawn on the NCBA account by, signed by, and made payable to petitioner. The four checks contained the following notations made by petitioner and were for the following amounts: Check No.
Notation
Amount
369
"Feb. Com."
$ 423.00
312
"Comm. on Book Sales"
192.10
291
"New Members 29 x 15%"
130.50
254
"7 New Members"
31.50
Petitioner testified that "Com." on check No. 369 was an abbreviation for "commodity." With respect to check No. 312, petitioner initially testified she did not know for what "Comm." was an abbreviation, *448 later suggested it could be an abbreviation for "commodity," later stated she did not recall how she coded check notations, later improperly invoked her Fifth Amendment right against self-incrimination, and finally concluded that she did not know what "Comm." on check No. 312 meant. Since the petitioner made the notations herself, we find this testimony to be evasive and totally lacking in credibility. Petitioner's explanation of checks numbered 291 and 254 was equally as evasive and incredible. One of petitioner's witnesses was Mrs. Joanna Grandbouche, widow of the founder of the NCBA. She testified that, to her knowledge, petitioner was never paid anything for the services petitioner provided to the NCBA and that it was not NCBA's policy to compensate people for soliciting new members. Mrs. Grandbouche was not familiar with the details of what petitioner did for the NCBA. For example, she knew petitioner wrote letters and spoke on the phone but did not know the purpose of the letters or phone calls. She did not know how many members were in the NCBA. She did not know if petitioner solicited new members for the NCBA. During 1980, petitioner received $ 52 from the City *449 of Boulder for giving music lessons. Respondent determined that this amount was income. Petitioner and her husband have three children. In 1980, the three children's ages were 12, 8, and 6. Petitioner's husband has not claimed exemptions for the three children, and respondent's computation of petitioner's deficiency did not allow petitioner exemption for the three children. Petitioner and her husband agree that the exemptions for their three children should be utilized in determining petitioner's deficiency. OPINION Upon respondent's oral motion made at trial, the Court dismissed petitioner's case as it relates to 1982 and 1983 for failure to properly prosecute. Accordingly, the only years presently before the Court are 1980 and 1981. The first issue is whether petitioner had unreported income for the 1980 and 1981 taxable years. Respondent's determination in the notice of deficiency of unreported income is presumptively correct, and petitioner bears the burden of proof to show error therein. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner's explanation of why she received the 13 checks from NCBA in 1980 and the 3 checks from NCBA *450 in 1981 and her testimony in general were not credible. Her suggestion that "Comm. on Book Sales" meant "Commodity on Book Sales" is ludicrous: "Commodity on Book Sales" is a meaningless phrase. The Court holds that "Comm. on Book Sales" meant "Commissions on Book Sales." Petitioner's testimony that she never received compensation for recruiting new members of NCBA is refuted by the checks with the notations "7 New Members" and "New Members 29 x 15%." The check with the "7 New Members" notation was for $ 31.50, which works out to be $ 4.50 per each new member. The check with the "New Members 29 x 15" notation was for $ 130.50, which also works out to be $ 4.50 per each new member. The Court holds that petitioner was paid $ 4.50 by the NCBA for each new member she assisted in recruiting. Petitioner's testimony was continually evasive and totally lacking in credibility. She dilatorily refused to tell the truth. Her testimony is not sufficient to meet her burden of proof. Petitioner offered the testimony of Mrs. Grandbouche, with respect to both the 1980 and 1981 taxable years, and the testimony of her husband, with respect to the 1981 taxable year. Mrs. Grandbouche testified *451 that, to her knowledge, petitioner never received compensation from the NCBA and that it was not the policy of the NCBA to compensate people for recruiting new members. Mrs. Grandbouche was, however, unfamiliar with the operations of NCBA, and her testimony of NCBA's policy is given little weight. Further, the Court has already held that the NCBA did compensate petitioner, in part for her effort in recruiting new members. Petitioner's husband's testimony, like petitioner's, was lacking in credibility. Petitioner offered virtually no documentary evidence. [4]
The evidence presented simply is insufficient to meet petitioner's burden of proof here. We hold that petitioner has failed to carry her burden of proof. Respondent's determination of petitioner's income from NCBA is sustained, other than as indicated in n.2 supra. Further, petitioner received $ 52 in 1980 for giving music lessons. We hold that this amount, as determined by respondent, is taxable income. The next issue is whether petitioner is entitled to three dependency exemptions. The *452 burden of is on petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In certain situations, section 151(e) allows a taxpayer an exemption for each "dependent." [5] Dependent is defined, as is relevant here, as a child of the taxpayer over half of whose support was received from the taxpayer. Sec. 152(a). Special support tests are set forth where, inter alia, no one person contributes over half of the support for the taxpayer's child, sec. 152(c), or the taxpayer claiming an exemption for his or her child is divorced or legally separated under a decree of divorce or separate maintenance or is separated under a written separation agreement, sec. 152(e). [6] Petitioner has failed to prove that she contributed over half of the support for any of her three children, see sec. 152(a); that no one person contributed over half of the support for any of her three children, see sec. 152(c); or that she and her husband were divorced or legally separated under a decree of divorce or separate maintenance or were separated under a written separation agreement, see sec. 152(e). Accordingly, petitioner has failed to prove that her three children are "dependents" as *453 defined for purposes of section 151, and we hold that petitioner is not entitled to the three exemptions. The next issue is whether petitioner is liable for the additions to tax determined by respondent. Petitioner bears the burden of proof with respect to each of the additions to tax. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 6651(a)(1) imposes an addition to tax where a taxpayer delinquently files his or her return. Petitioner has never filed returns for any of the years at issue. Respondent's determination of section 6651(a)(1) additions to tax is sustained. Section 6653(a) imposes an addition to tax where a taxpayer's underpayment of tax is attributable to negligence or intentional disregard of the rules and regulations. Petitioner is an intelligent, well-educated woman who received income sufficient *454 to require the filing of returns during the years at issue but nonetheless failed to so file returns. The Court sustains respondent's determination of additions to tax pursuant to section 6653(a). [7]
Section 6654 imposes an addition to tax where a taxpayer underpays estimated tax. Petitioner failed to introduce any evidence at trial indicating why this addition to tax is not applicable and failed to argue the issue on brief. [8] Accordingly, we sustain respondent's determination of additions to tax pursuant to section 6654. In closing, we note that petitioner's dilatory tactics during the preliminary proceedings and trial which covered portions of four days from *455 September 15, 1986, through September 25, 1986, though unhelpful to her case, did not go unnoticed by the Court. Petitioner is hereby warned that should she again utilize similar dilatory tactics [9] before this Court, sanctions will be imposed. *456 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Amounts represent additions pursuant to section 6653(a) for 1980 and additions pursuant to section 6653(a)(1) for 1981, 1982, and 1983. Further, with respect to 1981, 1982, and 1983, respondent has determined additions to tax pursuant to section 6653(a)(2) equal to 50 percent of the interest due on the underpayment caused by negligence. Section 6653(a) with respect to 1980 and sections 6653(a)(1) and (2) with respect to 1981, 1982, and 1983 will be referred to as "section 6653(a)."↩
3. Petitioner adequately established by the submission of documentary evidence that $ 224.95 of this 1980 amount was not income.↩
4. Petitioner did offer documentary evidence with respect to one item of income determined by respondent. See n.3 Supra.↩
5. Section 151(e) has been redesignated as section 151(c) by section 103(b) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2103. ↩
6. Section 152(e) has been amended by section 423(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 801, effective for years subsequent to the years in issue. ↩
7. See n.2 supra↩ with respect to our reference to section 6653(a). 8. See Money v. Commissioner, 89 T.C.    (July 6, 1987) (slip op. at 4); Atlee v. Commissioner,67 T.C. 395, 396 n.2 (1976); Hedrick v. Commissioner,63 T.C. 395, 396-397 (1974); Alexander v. Commissioner,61 T.C. 278, 288 n.6 (1974); Estate of Juster v. Commissioner,25 T.C. 669 (1955). See also Boomershine v. Commissioner,T.C. Memo. 1987-384↩. 9. Petitioner's dilatory tactics included the following: 1. Petitioner filed a 12-page 60-paragraph typewritten petition which makes numerous vague references to the United States Constitution and is notable for its lack of relevant factual allegations. 2. At the call of the calendar petitioner moved for a continuance because she felt respondent failed to explain why she was being investigated; 3. At the time of the scheduled trial, petitioner moved for a continuance because she had just hired an attorney who needed more time to familiarize himself with the case; and 4. At trial, a. petitioner testified in an evasive and incredible manner; b. petitioner and petitioner's husband improperly invoked the Fifth Amendment right against self-incrimination; c. petitioner offered the testimony of her husband, which testimony was lacking in credibility; d. petitioner offered the testimony of Mrs. Grandbouche, which testimony indicated that Mrs. Grandbouche was insufficiently familiar with the facts to which she testified; and e. though the record is not entirely clear, it appears as though petitioner's counsel "suggested" possible evasive answers to petitioner. ↩