GARY L. SCHLAFER and LINDA SCHLAFER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schlafer v. Commissioner
Docket No. 20029-87
United States Tax Court
T.C. Memo 1990-66; 1990 Tax Ct. Memo LEXIS 66; 58 T.C.M. (CCH) 1374; T.C.M. (RIA) 90066; February 13, 1990
Barton T. Sprunger, Mark J. Richards, and James R. Fisher, for the petitioners. Brett James Miller and Timothy S. Sinnott, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated April 1, 1987, respondent determined deficiencies in petitioners' Federal income tax for 1984 and 1985 in the amounts of $ 6,532.76 and $ 11,156.28, respectively. The issues for decision are: 1. Whether petitioner's automobile sales activity and automobile racing activity are separate activities for *68 purposes of section 183; [1]
2. Whether petitioner's automobile racing activity was engaged in for profit during taxable years 1984 and 1985 within the meaning of section 183(a); and 3. Whether petitioner's wholly owned automobile sales dealership is entitled to an advertising expense deduction under section 162 for expenses incurred in connection with petitioner's automobile racing activity. FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and accompanying exhibits are incorporated by this reference. Automobile Racing Activity
Petitioners resided in Anderson, Indiana, when they filed their petition. Petitioner (all references to petitioner are to Gary L. Schlafer) began racing motor vehicles when he was 8 years old, winning national go-kart championships in 1962 and 1963. He raced modified stock cars in Wisconsin from 1972 through 1975 with considerable success. *69 However, petitioner never made a profit from his stock car racing activity. Petitioner moved to Anderson, Indiana, in 1976, where he owned and operated an automobile body shop until 1979, when he purchased Broadway Sales Corporation (hereinafter referred to as Broadway Sales), an electing small business under subchapter S. During the years at issue, petitioner was the sole shareholder of Broadway Sales, which is a Chrysler automobile dealership located in Anderson. Anderson is also the site of a major sprint car race known as "the Little 500" which has been run at the Anderson Speedway for over 40 years. A sprint car is a highly modified open-wheeled race car which bears little resemblance to an ordinary automobile. Petitioner has raced sprint cars since 1979. In both 1984 and 1985, petitioner ran in 2 sprint car races in addition to the Little 500, both of them out of state. Petitioner did most of the maintenance work on his race cars himself. Other than major automotive repair work which was contracted out to engineering firms and speed shops, petitioner did not employ anyone to help him race. On occasion, petitioner used a mechanic from Broadway Sales. In addition, *70 he was assisted by friends who volunteered their time and also served as his pit crew. Petitioner frequently purchased replacement parts through Broadway Sales during 1984 and 1985. The amounts expended by Broadway Sales were posted to its accounts receivable as amounts due from petitioner. During each May, petitioner worked full time in preparation for the Little 500. During the rest of the year petitioner devoted minimal time to the automobile racing activity. Petitioner did not maintain a separate checking account for the auto racing activity, nor did he maintain detailed books or records of his winnings and expenses. From 1979 through 1983, petitioner generated no winnings from his automobile racing activity and incurred expenses of $ 8,660, $ 5,916, $ 6,405, $ 12,762 and $ 12,856, respectively. During 1984 and 1985, petitioner's winnings, expenses, and resulting net losses from his automobile racing activity were as follows: Item
1984
1985
Winnings
$  1,721.00 $  1,490.00 Expenses
(25,629.00)
(24,097.00)
Net Loss
($ 23,908.00)
($ 22,607.00)
Even if petitioner had finished first in each of the 3 races he entered in 1984 and 1985, *71 the income generated from the victories would have been insufficient to cover his expenses. Race drivers do not depend on winnings alone to earn a profit. Much of the money in racing comes from sponsorships. During 1984, petitioner made no attempts to secure a major sponsor. During 1985, petitioner attempted to secure only one sponsor, Payless Food Stores; he was unsuccessful. Petitioner did not belong to any racing club or national or sanctioning automobile organizations during the years at issue. The races which petitioner entered were not affiliated with any racing club or national or sanctioning automobile organization. Automobile Racing As Advertising
Petitioner's race cars prominently displayed the logo "Gary Schlafer's Broadway Sales Corp." Petitioner's racing uniform and the uniform of his pit crew also displayed the name of the dealership. In addition, petitioner advertised his dealership at the Anderson Speedway in 1984 and 1985 by placing an advertisement in the Little 500 Souvenir Programs, by providing a pace car which displayed the name of the dealership, and by having a salesman on the premises. The name "Broadway Sales Corporation" appeared several *72 times in newpaper articles in connection with the Little 500 race. During 1984 and 1985, Broadway Sales had gross sales (excluding winnings from automobile racing) and advertising expenses (excluding automobile racing expenses) as follows: 1984
1985
Gross Sales
$ 4,428,294
$ 5,090,598
General Advertising
Expenses
19,783
18,285
Part of Broadway Sales' advertising budget consisted of contributions of $ 120 per car to the Chrysler Advertising Co-op, in which Broadway Sales, as a Chrysler dealer, elected to participate. With the funds from the Co-op, and additional funds budgeted for advertising, Broadway Sales ran regular advertisements in the local newspaper, radio station, television station, and on billboards. For taxable years 1984 and 1985, petitioners reported gross income of $ 98,641 and $ 122,424, respectively. OPINION Section 183(a) disallows all deductions attributable to activities "not engaged in for profit." Section 183(b)(1) then allows those deductions otherwise allowable regardless of profit objective, e.g., interest, State and *73 local taxes. Finally, section 183(b)(2) allows those deductions which would have been allowable had the activity been engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b)(1). Automobile Racing As Separate Activity
As a preliminary matter we must decide whether petitioner's automobile sales activity and automobile racing activity are a single activity for purposes of section 183. If so, petitioner's combined gross income from automobile sales and racing activity will exceed the claimed automobile racing expenses plus any deductions allowable under section 183(b)(1), and the expenses will therefore be allowable under section 183(b)(2). In relevant part section 1.183-1(d)(1), Income Tax Regs., provides as follows: where the taxpayer is engaged in several undertakings, each of these may be a separate activity, or several undertakings may constitute one activity. In ascertaining the activity or activities of the taxpayer, all the facts and circumstances of the case must *74 be taken into account. Generally, the most significant facts and circumstances in making this determination are the degree of organizational and economic interrelationship of various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business or in an investment setting, and the similarity of various undertakings. Generally, the Commissioner will accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities. The taxpayer's characterization will not be accepted, however, when it appears that his characterization is artificial and cannot be reasonably supported under the facts and circumstances of the case. If the taxpayer engages in two or more separate activities, deductions and income from each separate activity are not aggregated either in determining whether a particular activity is engaged in for profit or in applying section 183. We find that petitioner's automobile sales activity and automobile racing activity are separate activities for purposes of section 183. In keeping books and records petitioner treated the activities *75 as separate and distinct. The assets utilized in the automobile racing activity did not appear on the books and records of Broadway Sales. In addition, petitioner's accountant testified that he prepared the Federal income tax returns for both petitioners and Broadway Sales, and stated that he treated the income and expenses of the two activities as separate. Also, when petitioner purchased an auto part through Broadway Sales for his automobile racing activity, it was recorded in Broadway Sales' records as an amount receivable from petitioner. We do not find the organizational and economic interrelationship between the two activities to be of the degree necessary to find them to be a single activity. We therefore hold that the automobile sales and racing undertakings were two separate activities for purposes of section 183. Automobile Racing Activity Not Engaged In For Profit
Having found that petitioner's automobile racing activity is a separate trade or business for purposes of section 183, we must decide whether section 183 limits the deductions allowable from the activity. Respondent argues that petitioner's automobile racing activity was "not engaged in for profit" *76 and that, therefore, deductions attributable to the activity claimed by petitioners for taxable years 1984 and 1985 must be disallowed to the extent they exceed gross income from the activity. Section 183(c) defines an activity which is "not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Thus, section 183 does not apply if petitioner's activity gives rise to deductions under section 162 or under section 212(1) or (2). Deductions are permitted under those sections if an activity is commenced and continued with the "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Brannen v. Commissioner, 78 T.C. 471, 501 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Petitioner needs *77 not, however, establish that he had a "reasonable" expectation of profit. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra at 644-645. Whether petitioner had the requisite objective is an issue of fact to be resolved on the basis of all the surrounding circumstances. Dreicer v. Commissioner, supra at 645. Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors, which are in large part a synthesis of prior case law, to be considered in determining whether an activity is engaged in for profit. Benz v. Commissioner, 63 T.C. 375, 382-383 (1974). These factors include: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the *78 taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. No single factor is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). We find that petitioner's automobile racing activity was not engaged in for profit. Petitioner's lack of a bona fide objective to make a profit is indicated by his casual recordkeeping. A separate checking account was not maintained in 1984 or 1985. Nor did petitioner maintain books of account, balance sheets, budgets, and never attempted to determine his financial breakeven point. Finally, petitioner testified that prior to running a race he had no idea whether, if he won the race, he would make a profit. A failure to maintain complete and accurate books may indicate that the activity was not *79 engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs.
A record of substantial losses over many years and the unlikelihood of achieving a profitable operation are also important factors bearing on the taxpayer's objectives. Engdahl v. Commissioner, supra at 659, 666; Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). The record contains information concerning petitioner's racing activities for a period of 7 years (1979 through 1985) and in each of those years petitioner incurred a loss, the largest of which were incurred during the 2 years at issue. Nor could petitioner even have hoped to realize a profit during the years at issue. Total potential winnings from the races he entered in 1984 and 1985 were $ 16,000 per year, compared to $ 25,629 in expenses for 1984, and $ 24,097 for 1985. In addition, petitioner could not have anticipated financial relief from potential sponsorship income. During the years at issue, petitioner had no major sponsors and sought a sponsorship from only one business, Payless Food Stores. We agree that Broadway Sales was sponsor *80 of petitioner's automobile racing activity. However, because he was sole shareholder of Broadway Sales, he was in effect sponsoring himself, and therefore could not hope to profit from the sponsorship. We find that petitioner's record of losses over so many years, together with the unlikelihood of making a profit during the years at issue, is persuasive evidence that petitioner did not have the requisite objective of making a profit. Sec. 1.183-2(b)(6), Income Tax Regs.; Golanty v. Commissioner, supra at 427. Another factor to be considered is the expectation that the assets used in the activity may appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. Because the activity's assets consisted primarily of wasting assets, petitioner could not have possessed a bona fide objective of profit from potential capital appreciation in the assets employed in his racing activity. We also note that Broadway Sales provided petitioner with a substantial income, allowing him to absorb the losses resulting from his auto racing activity. Substantial income from sources other than the activity (particulary if the losses *81 from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved. Sec. 1.183-2(b)(8), Income Tax Regs.
Finally, where other factors establish that an activity is not engaged in for profit, the existence of personal pleasure or recreation may also indicate that an activity is not engaged in for profit. Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner, who began racing at the age of 8, derived a great deal of pleasure from the activity. In conclusion, we find that petitioner did not entertain an objective of realizing a profit from his automobile racing activity in 1984 and 1985, and the deductions attributable to the activity are therefore limited by section 183. Claimed Advertising Expenses
The final issue for decision is whether Broadway Sales is entitled to deduct as an advertising expense the costs of petitioner's auto racing activity. The burden of proof is upon petitioners to show that the claimed expenses are advertising expenses deductible by Broadway Sales under section 162 rather than personal *82 recreation expenses. Rule 142(a). Deductible expenses under section 162 must be ordinary, meaning a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). The expense must also be necessary, which means that the item must be appropriate or helpful to the taxpayer's trade or business. Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Finally, the expense must be reasonable in amount. United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Commissioner v. Lincoln Electric Co., 176 F.2d 815 (6th Cir. 1949). The determination of whether an expenditure is proximately related to a trade or business, as well as whether the expenditure is ordinary and necessary, involves a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). Petitioner cites to several cases in support of his claim that the car racing expenditures are allowable *83 as an advertising expense. Boomershine v. Commissioner, T.C. Memo. 1987-384; Hestnes v. Commissioner, T.C. Memo. 1983-727; Lang Chevrolet Co. v. Commissioner, T.C. Memo. 1967-212. Because the issue is one of fact the precedential value of these cases is limited. Nevertheless, we address the cases on which petitioner relies. In Lang Chevrolet Co. v. Commissioner, supra, the general manager of the taxpayer, a Chevrolet dealership, raced Chevrolet Corvettes. The cost of racing the cars was claimed as an advertising deduction by the taxpayer. The taxpayer established that those expenses constituted a relatively small part of the corporation's advertising budget, that the expenditures were made as a substitute for conventional advertising, and that the taxpayer made a number of sales as the direct result of the racing. The taxpayer also established that the general manager was one of the top drivers in the nation and that he was publicized several times for his racing achievements in the "Corvette News" which was printed by General Motors and distributed to owners of Corvette automobiles. The instant case *84 is distinguishable from Lang in several respects. The expense of petitioner's auto racing activity in both 1984 and 1985 exceeded Broadway Sales' overall advertising budget. In addition, petitioner failed to offer any evidence showing that the racing activity was a substitute for conventional advertising or that any sales were made as a result of the activity. We note that Broadway Sales elected to participate in the Chrysler Advertising Co-op, contributing $ 120 per car to the fund, thus satisfying petitioner's obligation to Chrysler. In Hestnes v. Commissioner, supra, the taxpayer, who owned and operated a slaughterhouse, paid $ 1,000 to sponsor a race car. The race car, which displayed the name of the slaughterhouse, was raced at several local circuits which were frequently attended by local farmers. We found that the sponsorship expenditure was reasonably calculated to advertise the taxpayer's business and therefore allowed the deduction. Hestnes is distinguishable from the instant case. In Hestnes the taxpayer's activities were limited to the sponsorship of a race car, while in the instant case petitioner purchased, maintained, and raced *85 the cars himself. In Boomershine v. Commissioner, supra, the president of a corporation which erected metal buildings raced cars which were owned by the corporation. The costs of acquiring, maintaining, and racing the cars were $ 26,952 for the first taxable year and $ 25,871 for the second taxable year. The corporation had no advertising expenses other than the car racing expenditures. We found that there was a proximate relationship between the car racing expenditures and the corporation's business. However, we found that the taxpayer had not established that the expenditures were reasonable in amount, and, based on Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), concluded that the corporation was entitled to deduct $ 10,000 of its car racing expenditures. We find, as we did in Boomershine, there is a proximate relationship between petitioner's automobile racing expenditures and Broadway Sales' business. We also find that Broadway Sales did benefit to some degree from the exposure it received in the Little 500. However, we note that petitioner's automobile racing expenses during the years at issue exceeded Broadway Sales' total *86 advertising budget. Petitioner cannot have expected to receive more benefit from entering one local race each year than from the television, radio, newspaper, and billboard advertisements that ran throughout the year. We find that petitioner has failed to prove that the claimed advertising deductions were reasonable in amount. Where an expenditure is, by its nature, ordinary and necessary, but is unreasonable in amount, only the reasonable portion qualifies for deduction under section 162. Boomershine v. Commissioner, supra at 45. Under Cohan v. Commissioner, supra, we are authorized, where a taxpayer proves that some part of an expenditure was made for deductible purposes and when the record contains sufficient evidence for us to make a reasonable allocation, to estimate the amount of allowable expenses. However, petitioner has failed to offer testimony or present documentary evidence showing that any portion of the automobile racing expenses at issue are allocable to advertising Broadway Sales. Under such circumstances, a deduction based on the Cohan *87 rule would be "unguided largesse." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Epp v. Commissioner, 78 T.C. 801, 807 (1982); Contini v. Commissioner, 76 T.C. 447, 454 (1981). We therefore conclude that no portion of petitioner's automobile racing expenses is deductible as an advertising expense of Broadway Sales. In light of the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩