LAURENE E. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; M. ALOYSIUS SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket Nos. 4845-87; 4846-87.
United States Tax Court
T.C. Memo 1989-257; 1989 Tax Ct. Memo LEXIS 257; 57 T.C.M. (CCH) 531; T.C.M. (RIA) 89257; May 25, 1989; As corrected May 30, 1989 Gene Frederick Drake, for the petitioner. Robert W. Kern, for the respondent. WHALEN
MEMORANDUM FINDING OF FACTS AND OPINION WHALEN, Judge: Respondent determined the following deficiencies in, and additions to, the Federal income tax of petitioners for the following *258 taxable years: Addition to Tax Taxable Year Ended
Deficiency
[1] Section 6653(b) I.R.C.
December 31, 1978
$ 13,735.09
$ 6,867.55 December 31, 1979
39,354.02  19,677.01  December 31, 1980
41.591.42  20,795.71  December 31, 1981
32,235.67  16,117.84  The issues for decision are: (1) whether petitioners realized certain income which they did not report on their joint Federal income tax return for each of the years at issue; (2) whether petitioners are entitled to deduct certain automobile expenses; and (3) whether a part of the underpayment of tax for each subject year was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated by the parties and the stipulation of facts and attached exhibits are hereby incorporated herein by reference. At the time each of the petitions in this consolidated proceeding was filed, petitioners resided at 80 Greentree Road, Chagrin Falls, Ohio 44022. Petitioners, husband and wife, have been married since 1951. They are both natural-born Canadian citizens. *259 They emigrated to the United States in 1964 and have been lawful permanent residents since that time. Soon after coming to this country, petitioner M. Aloysius Smith ("Mr. Smith") became employed as a salesman for Executone of Cleveland, Inc. ("Executone"). He continued in that capacity until 1970 when he became president of Executone. During the years at issue, 1978 through 1981, Mr. Smith was the president and sole shareholder of Executone. Petitioner Laurene E. Smith ("Mrs. Smith") became employed by Executone in 1970 and was the bookkeeper for Executone from 1970 through 1975. From 1975 through and including 1981, she was Executone's office manager. During the years in issue, she was also a corporate officer (Secretary-Treasurer) of Executone. Executone was incorporated under the laws of the State of Ohio on September 27, 1963. Since its inception, and throughout the period at issue, Executone was engaged in the sale, lease, and installation of private telephone, intercom, and communications systems. During the period at issue, it was headquartered in Eastlake, Ohio and employed approximately 100 persons. For financial and Federal income tax purposes, Executone used *260 a fiscal year ending September 30. On their Federal income tax returns, petitioners reported Mr. Smith's salary from Executone in the following amounts: Year
Amount
1978
$ 30,000 1979
40,000
1980
42,000
1981
100,000
Petitioners reported no salary or wages paid by Executone to Mrs. Smith for any of years at issue. In addition to Mr. Smith's salary, Executone made weekly payments to petitioners as so-called expense reimbursements. Unlike other employees of the company, petitioners were not required to, and did not usually, supply any receipts of their expenses. Unlike other employees who were given expense checks drawn to their order, such payments to petitioners were usually, but not always, made with checks payable to petty cash. Petitioners regularly received at least one weekly check for expenses and sometimes received more than one. Each such regular weekly check was drawn on the corporation's regular account and was usually in the amount of approximately $ 350 per week. Petitioners reported none of the so-called expense reimbursements on their returns for the subject years and respondent has not sought to include any such amounts in petitioners' *261 income. In addition to salary and expense reimbursements, petitioners caused funds of Executone to be paid to or for their benefit and they used certain company property without compensation, summarized on the following schedule: 1978
1979
1980
1981
Checks Written
$ 10,170.00
$ 59,890.00
$ 41,236.00
$ 22,438.00
To Petitioners
And Their Family
Members
Checks Payable
15,100.00
--    16,000.00
--    To Executone
And Recorded
As Loans from
Shareholder
Checks Payable
--    --    2,463.47
3,908.78
To American Express
For Credit Cards
In Name of Mr. Smith
and Members of
His Family
Checks Written
1,514.46
4,391.63
8,248.13
13,321.33
By Mr. Smith For
Miscellaneous
Personal Expenses
Additional Amounts
Determined by
Respondent
276.08
5,801.46
2,989.97
2,012.51
Totals     $ 27,060.46
$ 70,083.09
$ 70,937.51
$ 41,680.62
Petitioners failed to report the above amounts on their income tax returns for the years at issue. Petitioners also failed to report interest income of $ 1,133.85 which they realized in 1980 and interest income of $ 5,323.41 which they realized in 1981. Finally, *262 petitioners claimed deductions on their income tax returns for the years at issue, for the following employee business expenses: Year
Amount
1978
$ 4,869.00
1979
4,810.00
1980
5,845.80
1981
5,307.00
Petitioners claimed the above amounts as deductible expenses paid for Mr. Smith's use of an automobile for Executone's purposes. Such amounts were computed by using the so-called mileage rate method, as opposed to actual expenses incurred, and by adding thereto parking fees and tolls. During each such year, Executone provided an automobile to each of the petitioners and Executone paid all car expenses; neither petitioner owned or leased an automobile during the years at issue nor did either petitioner incur unreimbursed car expenses on behalf of Executone. All of the funds which petitioners caused Executone to pay to them or to members of their family, as summarized on the above schedule, were drawn by petitioners from a checking account maintained in Executone's name at the State Bank and Trust Company ("State Bank"). Petitioners opened the State Bank account prior to 1978, and Mr. Smith was the only individual who had signature authority over it. At that *263 time, there were two other bank accounts in Executone's name, a regular corporate account maintained at Central National Bank, and a payroll account maintained at Midwest Bank and Trust Company. Petitioners made all deposits to the State Bank account. During the years at issue, aggregate deposits to the account amounted to more than $ 200,000. Petitioners obtained virtually all of such funds from payments made by customers of Executone which petitioners diverted from the company's normal bookkeeping system and from the company's usual practice of depositing such sales receipts into its regular bank account. Acting in concert, petitioners removed certain checks received by Executone in the mail and gave the remaining checks to the company's bookkeeping staff for entry in the company's sales journal and for deposit into the company's regular bank account. Mrs. Smith kept a record of the checks thus removed from normal processing before giving the checks to Mr. Smith who deposited them into the State Bank account. Petitioners, acting in concert, took steps to prevent the funds deposited into the State Bank account from being recorded in Executone's sales journal or otherwise *264 in Executone's books and records. For example, Mrs. Smith withheld from Executone's bookkeeper the invoices for payments deposited to the State Bank account so that sales and lease income reflected by such invoices was not recorded in Executone's sales journal. Petitioners caused all payments made by certain customers of Executone to be deposited into the State Bank account and to be omitted from the books of Executone. On occasion, when Mrs. Smith was too busy to review invoices before they were posted by the bookkeeper or when Mr. and Mrs. Smith were away from the office, checks received from one or more of such customers were posted to the corporate books as income. Subsequently, Mrs. Smith would direct the bookkeeper to cancel the entry. In other cases, Mrs. Smith would direct the bookkeeper to cancel an entry and reenter a sale (or other income-generating transaction) at an amount less than the amount of the check received. On one occasion, when petitioners were planning to be away for a period of time, Mrs. Smith provided a bookkeeper with a memorandum instructing the bookkeeper not to deposit checks received from customers listed on the memorandum to the regular corporate *265 account, but to "hold them" until petitioners returned. In preparing Executone's tax returns and financial statements, the company's outside accountant used only the corporate books, which did not reflect the sales and lease proceeds deposited to the State Bank account. Therefore, the company's tax returns and financial statements for the subject years understate sales and taxable income by the amount of such proceeds. Petitioners maintained a detailed record of the receipts made to and from the State Bank account but they did not give such record to the company's accountant nor did they tell him about the State Bank account. Mr. Smith conferred frequently with the accountant who prepared Executone's tax returns and Mr. Smith signed Executone's Federal income tax returns on its behalf. During the Internal Revenue Service's examination, Mr. Smith made a number of false and misleading statements to respondent's agents. He told Special Agent Krysiak that he (Smith) did not make the bank deposits to Executone's accounts but that was the responsibility of the company's bookkeepers. In fact, to the contrary, Mr. Smith normally made all bank deposits for the company. Mr. Smith *266 told Agent Krysiak that all checks received by Executone were deposited to the company's regular account at Central National Bank, and not to the payroll account or to the State Bank account. Mr. Smith also told Agent Krysiak that all deposits into the State Bank account were transfers from the corporation's regular account. In fact, to the contrary, a number of checks from customers involving a substantial amount of money were deposited by petitioners directly into the State Bank account and, in fact, during the period at issue, no transfers were made from the corporation's regular account to the State Bank account. During the course of the examination of petitioners' 1979 Federal income tax return, Mr. Smith provided the Internal Revenue Service agents with a letter signed by "Edith Quinn," whom he identified as Executone's office manager. The letter stated as follows: July 13, 1981 Internal Revenue Service Audit Department
5311 Northfield Road Bedford Hts. Ohio, 44146 Dear Sirs: This is to advise you that the company policy regarding Mr. Smith's out side sales expenses is that Mr. Smith provides his own vehicle and all expenses for same. He also pays *267 his own parking and tolls. Sincerely, Executone of Cleveland, Inc. /s/Edith Quinn Edith Quinn Office Manager Contrary to the above letter, Mr. Smith did not supply his own vehicle. In fact, as mentioned above, neither petitioner owned or leased an automobile during the years at issue. Mrs. Smith signed the above letter using her maiden name, Quinn, and her middle name, Edith. She knew that Mr. Smith intended to give the letter to the Internal Revenue Service and both petitioners intended the letter to mislead and deceive the examining agent. Mr. Smith later told Agent Krysiak that, although he and Mrs. Smith did not own the automobiles they drove, they paid for the maintenance, gasoline, and oil expenses, as well as for parking and tolls. In fact, to the contrary, Executone reimbursed petitioners for all such expenses which they paid. On several occasions, petitioners caused Executone employees to execute fictitious purchase orders and then assign these orders to its supplier in New York. The purpose of this arrangement was to make it appear that Executone had sold telephone systems which the supplier was heavily promoting at the time. Petitioners *268 also caused Executone to assign to its supplier other invoices which were false in that they included equipment from sales other than the sale reflected on the invoice. Executone was thus able to obtain equipment for an order without assigning to its supplier the receivable from such sale. Neither of the petitioners filed Federal income tax returns for their taxable years 1975, 1976, or 1977. On February 1, 1985, the United States Attorney for the Northern District of Ohio filed a criminal information against Mr. Smith in the United States District Court for the Northern District of Ohio, Eastern Division. Among other things, the information charged as follows: Count III
The United States Attorney further charges: On or about April 15, 1981, in the Northern District of Ohio, Eastern Division, the defendant MARTIN ALOYSIUS SMITH, a resident of Warrensville Heights, Ohio, who during the calendar year 1980 was married, did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the calendar year 1980, by preparing and causing to be prepared, by signing and causing to be signed, *269 and by mailing and causing to be mailed, in the Northern District of Ohio, a false and fraudulent income tax return for said calendar year on behalf of himself and his wife, which was filed with the Internal Revenue Service, wherein there was reported on line 34 (tax table income) the amount of $ 36,547.05 and wherein it was stated that the amount of income tax due and owing was $ 7,912.00, whereas, as he then and there well knew, their joint tax table income for the said calendar year was approximately $ 95,316.90, upon which said tax table income there was an income tax due and owing to the United States of America of approximately $ 38,054.97. In violation of Section 7201, Internal Revenue Code; Title 26, Section 7201, United States Code. * * * Mr. Smith pleaded guilty to the above count of the information and on May 21, 1985, judgment was entered finding Mr. Smith guilty of income tax evasion in violation of section 7201 as charged for the taxable year 1980. OPINION Petitioners' entire opening brief is devoted to an argument that the doctrine of equitable recoupment is applicable in this case. Petitioners claim that they owe no tax for the years *270 at issue, 1978 through and including 1981, because the tax deficiencies and additions to tax determined by respondent in his statutory notice must be offset under the doctrine of equitable recoupment by deductible losses sustained by petitioners in 1985. Petitioners claim to have sustained losses totalling $ 217,657 in 1985 when loans made by Mr. Smith to Executone and two other corporations became uncollectible. Parenthetically, we are at a loss to understand the reason petitioners believe that application of the doctrine of equitable recoupment is justified in this case. The loss of $ 217,657, which they claim to have sustained in 1985 is shown as a business bad debt deduction on Mr. Smith's income tax return and is based upon certain loans having become uncollectible during that year. The principal issue in this case, on the other hand, is whether petitioners realized taxable income in the form of constructive dividends when they diverted sales of Executone to their own use. See generally Truesdell v. Commissioner,89 T.C. 1280 (1987). We see nothing in the record of this case to suggest that the doctrine of equitable recoupment should be applied. We perceive *271 no single transaction or taxable event in this case which has been subjected to two taxes based on inconsistent legal theories nor have petitioners shown that the period of limitations for filing a claim for credit or refund for the year 1985, including the years to which a net operating loss for 1985 can be carried back, is a bar to correct any inequity which they perceive. Section 6511(a), (d)(2). In any event, the short answer to petitioners' argument is that the years before the Court in this case are 1978, 1979, 1980 and 1981 and we have no jurisdiction to determine whether the tax for any other year has been overpaid or underpaid, section 6214(b), and, thus, no jurisdiction to apply the doctrine of equitable recoupment. Commissioner v. Gooch Milling & Elevator Co.,320 U.S. 418 (1943); Phillips Petroleum Co. v. Commissioner, 92 T.C. (May 4, 1989). Moreover, petitioners' argument raises an entirely new issue which they failed to raise in any intelligible form until their opening brief. This issue cannot be considered at this point without surprise and prejudice to respondent and we, accordingly, refuse to do so. Seligman v. Commissioner,84 T.C. 191, 198-199 (1985), *272 affd. 796 F.2d 116 (5th Cir. 1986); Robertson v. Commissioner,55 T.C. 862, 864-865 (1971). Finally, there is no factual evidence to support petitioners' argument. They rely entirely on their 1985 income tax return which was received into evidence based upon the following stipulation of respondent's counsel: MR. KERN: Yes, it is our understanding Your Honor that Exhibit 37 constitutes the retained copies of Federal Income Tax Returns filed by Petitioners. For '82 it was a joint return, and for '83, '84 -- excuse me, 83, 84 and 85 were filed separately. We will stipulate that these are in fact copies of Petitioner's retained copies. We and primarily Your Honor we are not certain at this point if these returns have actually been filed. Your Honor has indicated that the record would be left open for a period of time after the trial session and during that time period, we will secure the original returns to see if in fact they have been filed, and if the original returns filed correspond with these copies. THE COURT: All right, I will then accept Exhibits 37 A through 37 G on that basis. Exhibit 38? We are unwilling to accept Mr. Smith's *273 retained copy of his 1985 return as proof of the truth of all of the matters set out therein. See Wilkinson v. Commissioner,71 T.C. 633, 639 (1979); Seaboard Commercial Corp. v. Commissioner,28 T.C. 1034, 1051 (1957). Petitioners' opening brief is remarkable not for what it says but what it fails to say. Petitioners fail to take issue with any of the adjustments determined by respondent in his notice of deficiency and they fail to mention or take issue with respondent's determination that the addition for fraud was appropriate for each of the subject years. Accordingly, we conclude that petitioners have abandoned the issues for which they bear the burden of proof and have conceded the adjustments determined by respondent other than the fraud addition. Money v. Commissioner,89 T.C. 46, 48 (1987); Atlee v. Commissioner,67 T.C. 395, 396 n.2 (1976); Hedrick v. Commissioner,63 T.C. 395, 396-397 (1974); Alexander v. Commissioner,61 T.C. 278, 288 n.6 (1973); Goulding v. Commissioner,T.C. Memo. 1988-212. We thus sustain respondent's determination that petitioners *274 failed to report income from Executone and certain interest income and we further sustain respondent's disallowance of petitioners' employee business expense deductions. We turn now to the fraud issue. Respondent bears the burden of proving fraud by clear and convincing evidence. Section 7454(a) and Rule 142(a). As to 1980, Mr. Smith is estopped to deny his liability for the fraud addition due to his conviction under section 7201 for attempting to evade or defeat Federal income tax for that year. Gray v. Commissioner,708 F.2d 243 (6th Cir. 1983), cert. denied 466 U.S. 927 (1984). It remains for us to decide whether Mr. Smith is liable for fraud for the years 1978, 1979 and 1981, and whether Mrs. Smith is liable for fraud for all years at issue. See section 6653(b)(3). For the reasons set forth below, the record overwhelmingly demonstrates that respondent has correctly determined that some part of an underpayment of tax for each year was due to the fraud of both petitioners. *275 An underpayment of tax is due to fraud if it results from the taxpayer's specific intent to evade a tax believed to be owing. Wilson v. Commissioner,76 T.C. 623, 633 (1981), supplemental opinion 77 T.C. 324 (1981). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each of the years at issue is attributable to fraud. Section 6653(b); Lee v. United States,466 F.2d 11, 16-17 (5th Cir. 1972). The existence of fraudulent intent is a factual question to be decided on the basis of an examination of the entire record. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. It may never be presumed but must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Because direct proof of a taxpayer's intent is rarely available, however, fraud may be established by circumstantial evidence. Fraud may be inferred from a taxpayer's entire course *276 of conduct with respect to the transaction in question. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Over the years, courts have developed a number of objective indicators, or "badges," which tend to establish fraud. Recklitis v. Commissioner,91 T.C. 874, 910 (1988). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing intent to conceal, justifies the inference of fraud. Holland v. United States,348 U.S. 121, 137-139 (1954). Fraud may be inferred where the taxpayer makes false and inconsistent statements to revenue agents, Grosshandler v. Commissioner,75 T.C. 1, 20 (1980), or files false documents, Stephenson v. Commissioner, supra at 1007. In particular, a taxpayer's diversion of corporate funds to his own use, coupled with his failure to record them in the corporate books and records, is clear evidence of *277 fraud. United States v. Thetford,676 F.2d 170, 175 (5th Cir. 1982); Brunner v. Commissioner,T.C. Memo. 1989-24. A taxpayer's failure to supply complete information about his income and expenses to his tax return preparer is further evidence of fraud. Korecky v. Commissioner,781 F.2d 1566, 1568, 1569 (11th Cir. 1986), affg. per curiam a Memorandum Opinion of this Court. A taxpayer's dishonesty in business transactions or willingness to defraud others may indicate a willingness to defraud respondent. McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976); Sullivan v. Commissioner,T.C. Memo. 1989-30. Finally, a taxpayer's business experience and knowledge of the tax laws may tend to prove or disprove the existence of fraud. Plunkett v. Commissioner, supra at 303; Drobny v. Commissioner,86 T.C. 1326, 1349 (1986). The record in this case clearly and convincingly establishes that petitioners jointly masterminded a scheme to divert Executone's income to their *278 own use without reporting the diverted income on either Executone's or their own income tax returns. This scheme resulted in a substantial underpayment of petitioners' Federal income tax for each of the years in issue. There are numerous badges of fraud in this case. Petitioners intentionally manipulated and altered Executone's books and records or caused that to be done by others for the purpose of omitting the proceeds deposited in the State Bank account. They did not inform the company's accountant who prepared its returns of the existence of either the account or of the diversion scheme. Petitioners caused substantial amounts to be paid from this account to or for the benefit of themselves and their family members during each of the years in issue, and failed to report such amounts on their Federal income tax returns. Both petitioners were knowledgeable about income tax reporting requirements. Both of them were deeply involved in Executone's operations over many years, including the years at issue; Mr. Smith signed the company tax returns and worked with its outside accountant in preparing such returns and Mrs. Smith conducted and later oversaw the company's bookkeeping *279 functions. Their business background and experience thus indicates that the omissions of income were intentional. Petitioners omitted substantial amounts of interest income from their 1980 and 1981 returns. Mr. Smith lied to the examining agent about a number of matters. In particular, he submitted a letter to the Internal Revenue Service, drafted by Mrs. Smith, containing false statements about his ownership of an automobile. Mrs. Smith signed the letter in her maiden name in order to create the appearance that it came from someone other than herself. On their Federal income tax returns for the years in issue, petitioners claimed deductions for Mr. Smith's use of an automobile for Executone's purposes. These were computed by using the standard mileage rate method. However, neither petitioner personally owned any automobiles during the years in issue. Rather, Executone provided automobiles to petitioners, and paid all expenses relating to the automobiles. Petitioners did not refer to the fraud issue in their brief. However, at trial, Mr. Smith appeared to take the position in his testimony that the State Bank account arrangement was not a mechanism to divert income from *280 Executone and to understate petitioners' Federal income tax liability for two reasons. First, Mr. Smith testified that certain receipts of Executone were deposited to the State Bank account to alleviate cash flow problems brought about when receivables were assigned to Executone's supplier for merchandise which the company needed in its rapidly expanding business. According to this explanation, invoices reflecting such receivables could not be recorded on the company books as sales and proceeds from them could not be deposited to the regular corporate account. The fact remains, however, that petitioners maintained a careful record of the diverted sales. They have advanced no reason to explain why they could not have reported such sales on Executone's Federal corporate income tax returns. Likewise, they have advanced no reason to explain why it was necessary to omit the amounts that they withdrew from the State Bank account from their individual Federal income tax returns. Respondent need not prove that tax evasion was petitioners' sole, or even their primary motive, but only that tax *281 evasion played a part in petitioners' conduct, including conduct designed to conceal another crime. Recklitis v. Commissioner,91 T.C. 874, 909 (1988). Thus, even if petitioners' primary motive for the diversion scheme was to conceal sales from Executone's supplier, petitioners' failure to report the diverted income to respondent was wholly unnecessary to accomplish such purpose and we are satisfied that petitioners were motivated by the desire to evade tax as well. Second, petitioners' counsel spent time at trial attempting to show the existence of a liability account on Executone's books for loans which Mr. Smith allegedly made to Executone. We interpret this to be a contention that the amounts paid out from the State Bank account to and for the benefit of petitioners and their family members were repayments of loans which Mr. Smith had previously made to Executone. A threshold problem with this argument is that we are not able to find that any such loans existed. The only evidence of such loans introduced by petitioners consists of the unaudited balance sheets which were prepared by Executone's accountant based upon information provided by petitioners. No *282 promissory notes, letters, interest calculations, or other evidence of a loan or loans were submitted. Significantly, none of the payments from the State Bank account were denominated as loan repayments. Petitioners did not seek testimony about Executone's balance sheets from the accountant who prepared them, even though he testified at trial. We infer that the accountant's testimony about such financial statements would have cast further doubt upon their credibility. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We conclude that respondent has proven by clear and convincing evidence that a portion of petitioners' underpayments for each of the years in issue was due to the fraud of both petitioners. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.↩